COMMONWEALTH *vs.* JOHN P. CLUNE & another.

Hampden.    September 26, 1894. — October 18, 1894.

Present: ALLEN, MORTON, LATHROP, & BARKER, JJ.

*Indictment — Grand Jury — Principal and Accessory — Witness.*

If an indictment has been quashed, it is not necessary for the grand jury to examine the witnesses anew before finding a second indictment against the same person for the same offence ; and the facts that some of the grand jurors who found the original indictment were absent when the second indictment was found, and that others were present when the second indictment was found who were absent on the former occasion, do not render the indictment invalid.

A. prepared a forged check and delivered it to B. on the street, asking the latter to get a messenger boy to take it to the bank on which it was drawn and get it cashed.  B. walked up the street until he found a boy, and then down the street until he was nearly opposite the bank, when he sent the boy with the check into the bank for the money.  The boy obtained the money and gave it to B., who went into a store and got a bill changed and paid the boy for his services, and when B. came out of the store A. was coming across the street to where B. was, and upon reaching him asked him if he had got the money, and received it from him less the sum paid the boy.  *Held,* that A. could be convicted of uttering the check.

It is not error, in a criminal case, to refuse to instruct the jury that it would not be safe to convict the defendant upon the testimony of an accomplice, unless corroborated in a material point, or that such testimony should be scrutinized with great care and caution.

There is no rule of law that, if a witness in a case has sworn falsely in one particular, it is unsafe for the jury to rely on any part of his testimony, or upon any uncorroborated statement by him ; but the credibility of a witness is for the jury.

INDICTMENT against John P. Clune and James Malley, found at the September term, 1893, of the Superior Court, for uttering a certain forged instrument, on December 22, 1892, at Springfield.

Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

An indictment for the same offence was found against Clune and Malley at the May term, 1893, of the Superior Court. Both indictments were found by the grand jury drawn, summoned, and impanelled for the year 1893. The indictment found at the May term was quashed, upon motion of Clune.

On the indictment found at the September term, Clune and Malley were duly arraigned, and before the jury were impanelled Clune filed a plea in abatement, upon the following grounds: "1. Because said indictment was found and returned without any legal evidence having been presented to or heard by the grand jury who found and returned said indictment. 2. Because said indictment was found and returned by said grand jury without any evidence having been presented to or heard by them with reference to the offence in said indictment alleged. 3. Because no witnesses were heard by said grand jury with reference to the charge in said indictment set forth."

At the hearing upon the plea, Clune offered to prove that at the September term, when the indictment was found, no witnesses appeared before the grand jury, and no evidence was then introduced; that certain grand jurors, who were present at the May term and heard the evidence then presented upon which the indictment was found at that term, were not present at the September term ; and that certain grand jurors were present at the September term who were not present at the May term, when the evidence relating to said offence was introduced. The government objected to the introduction of this evidence. The judge refused to hear the evidence, and to quash the indictment; and Clune excepted.

At the September term, Clune and Malley were duly tried on the indictment found at that term, the jury returning a verdict of guilty as to Malley, and disagreeing as to Clune, and at the May term, 1894, Clune was again placed on trial.

The government offered evidence tending to show that on December 22, 1892, Clune went into the tax collector's office in the City Hall, in Springfield, and there took from a desk, upon which were blank checks on the different banks of the city, as well as blank notes and pieces of paper, something

which the tax collector believed to be one of the blanks; that about one hour later on the same day he met the city messenger outside and in the rear of the City Hall, and asked permission. of him to use his desk and paper for the purpose, as alleged by Clune, of writing a note or bill against a person who owed him ; that permission was accorded him, and he went into the city messenger's office in the City Hall, located on the opposite side of the corridor from the tax collector's office, but nearer the front of the building, and wrote at the desk in that office for about three minutes; that, still later in the day, as testified by Malley, Clune went to Malley and handed him, at or near a billiard saloon on Main Street, in Springfield, (Malley being uncertain as to the precise place,) an envelope sealed and addressed to the teller of the Chicopee National Bank in that city, and asked Malley to get a messenger boy to take it to the bank and get it cashed; that Malley went into the billiard saloon and then went up Main Street to the north until opposite a certain dry goods store, where he saw a messenger boy, whom he asked to do an errand for him ; that Malley and the boy then walked down Main Street, Malley behind the boy, (the boy testifying that Malley asked him to walk some twenty feet ahead of him,) until they got nearly opposite the Chicopee National Bank, and Malley then gave the boy the envelope which he had received from Clune, telling the boy to go across the street and present the envelope to the teller of the bank, and that he would probably receive some money, and, when he came out, to meet Malley in the hallway next to a drug store, which was across the street from and nearly opposite the bank; that, in pursuance of this request, the boy went to the bank, presented the envelope to the teller, who unsealed the same and drew therefrom the check or order, which was set out in the indictment, and also a letter accompanying the same, requesting the teller to pay the bearer the amount of the check, and purporting to be signed by the drawer of the check; that the teller handed the boy the sum of fifty dollars, and the latter immediately crossed the street to where Malley was standing in said hallway, handed Malley the fifty dollars, and went with him into the drug store, where Malley got one of the bills changed and paid the boy twenty-five cents for his services; and that the boy then passed out and did not at any time see Clune.

Malley testified that, when he came out of the drug store, where he remained some five minutes talking with the clerk, he saw Clune coming diagonally across the street from Court Square, which was the first he had seen of him since receiving the envelope; and that Clune passed over to where Malley was and asked him if he had got the money, and there received the money, less the twenty-five cents paid the messenger boy.

Malley testified in behalf of the Commonwealth, and had not been sentenced since his conviction by the jury, as above stated. Malley further testified that, some time after the delivery of the money by him to Clune, the latter, on the same afternoon, gave back to him some part of it; and that later he and Clune went to Hartford, Connecticut, together. Clune admitted going to Hartford, but denied being in the company of Malley. Both returned to Springfield the same evening. A plan of the location may be referred to.

The defendant Clune requested the judge to instruct the jury as follows :

" 1. Upon the evidence and indictment in the case, the defendant should be acquitted.

" 2. If the order described in this indictment was a false, forged, or counterfeit order, and if Clune merely handed or gave the same to Malley for the purpose of having Malley obtain the money upon the same for Clune, and if Malley knew or had reason to know that the order was false, forged, or counterfeit, and if Malley obtained the money upon the same, then Malley was the utterer or publisher of the order within the meaning of the law, and Clune was but an accessory before the fact, and cannot be convicted under this indictment.

" 3. If the order was a false, forged, or counterfeit order, and if Clune, knowing its character, handed the same to Malley and told Malley to get a messenger boy and get the money on the same, and Malley, knowing or having reasonable cause to know that the order was false, forged, or counterfeit, gave the same to the messenger boy, who obtained from the bank the money on the same, and gave the money to Malley, who in turn found Clune and gave the same to him, then Clune cannot be convicted upon this indictment.

" 4. The defendants are improperly joined in this indictment, and Clune cannot be convicted thereon.

" 5. Malley is an accomplice, and it would not be safe to convict Clune upon his testimony, unless corroborated in a material point.

" 6. If Malley was an accomplice of Clune in the forging or uttering of the order, his testimony should be scrutinized by the jury with great care and caution.

" 7. If, in any material point, Malley has wilfully and designedly sworn falsely, it would be unsafe to rely upon any part of his testimony; for if in any particular it was ascertained that material testimony was designedly false, the jury would have no sufficient security that the same might not be true of every other portion of his testimony.

" 8. It is unsafe for the jury to rely upon any uncorroborated statement of a witness who in any one thing has knowingly and wilfully testified falsely."

The judge refused to give the instructions requested, and, among other things, instructed the jury as follows:

" If the order was a false, forged, or counterfeit order, and if Clune gave the same to Malley for the purpose of having Malley obtain money on the same for Clune, and if Clune was not present aiding and encouraging Malley in the uttering of the check, and if Malley knew, or had reason to know, that the order was false, forged, or counterfeit, and if Malley obtained the money on the same, then Malley was the utterer or publisher of the order within the meaning of the law, and Clune was the accessory before the fact, and cannot be convicted on the indictment. If the order was a false, forged, or counterfeit order, and Clune, knowing it, handed the same to Malley and told Malley to get a messenger boy and get the money on the same, and Malley, knowing or having reasonable cause to know that the order was forged or counterfeit, gave the same to the messenger boy to obtain at the bank the money on the same, and he gave the money to Malley, who in turn found Clune and gave the same to him, and Clune was not present aiding or encouraging Malley at the uttering of the order, then Clune cannot be convicted on this indictment. . . .

" Assuming that Malley got this check from Clune, and got

money on it substantially in the way the government claims, he would be an utterer of the check. As I have already said, it is an offence which more than one may be concerned in, and the government claims that Clune is concerned in it, and so concerned as to be a principal. He is so indicted. He says, while he contends he had nothing to do with it, if he had anything, upon the evidence, the whole evidence, as presented before you, he must be deemed an accessory, not a principal. So it is important for you to have clearly in mind the distinction between an accessory and a principal, and that is what is intended to be set out in these requests. A principal is one who in the meaning of the law is present and abetting, assisting, and encouraging the performance, the perpetrating of the crime. An accessory before the fact is one who, not being present to aid, abet, assist, and encourage, has beforehand procured or taken other steps to have the crime perpetrated. . . .

"It must, therefore, be proved that the abettor was in a situation in which he might render his assistance in some manner to the commission of the offence. It must be proved that he was in such a situation by agreement with the perpetrator of the crime, or with his previous knowledge, consenting to the crime, and with the purpose of rendering aid and encouragement in the commission of it. . . .

"Take the evidence in this case. Suppose the government satisfied you on Clune and Malley having had some transaction about a previous check. Later Clune brought this check, with the note and the envelope addressed, and gave it to Malley, and gave Malley instructions in regard to the messenger boy, and told him about going to the bank and getting this money. What were their relations to each other? What was the understanding between them? Where was Clune in reference to Malley? Was he in the neighborhood? Was he near by when the money was brought from the bank? Was he near by for the purpose of giving encouragement and counsel, so as to assist him in case any sudden inquiry should be made from the bank, or did he simply, if at all, procure this check, and write the note, and give the envelope with the contents to Malley, with the direction to go and get the money and stay somewhere else, he himself absent so far off as not to be present within the sense

and fair meaning of this rule of law? . . . It does not depend necessarily upon any given number of feet, or upon any given number of rods. It may depend somewhat upon the nature of the crime. Suppose men were committing a burglary or a robbery of a bank, they might have half a dozen accomplices stationed around. Some might be at a very considerable distance, but there for the purpose of giving an alarm if anything happened, and within such a distance that by some signal arranged they might give the alarm to warn their confederates if somebody was stirring, then they might be found present within the meaning of the law, although not physically present, because present in the sense that they were located there for the purpose of giving warning or other assistance, if necessary, and at such a point that they could give warning.

" So, here, in dealing with this part of the case, you have to consider the evidence, what took place between Clune and Malley, what their understanding was, where they went, and how they conducted themselves, where Clune was, and with what purpose; and it becomes a matter of fact for you to determine, having these distinctions in mind, whether, if he is connected with it, it is in such a way as to be a principal or an accessory before the fact. If the latter, he could not be convicted under this indictment. They are separate offences, as much as burglary and robbery. . . .

" There is something to be said about one or two matters of evidence. One is the testimony of Malley. He is a competent witness. You have heard his history, you have heard the statement as to his having been convicted and imprisoned, you have heard his statement as to his connection with this case, you have the facts before you that he has been tried and found guilty of this offence, that there has been a motion for a new trial in his case which has not been disposed of, and you have heard the suggestion that he might be influenced in his testimony by some possible advantage which he expects may accrue to himself by testifying. There is no evidence of any agreement between him and any prosecuting officer as to any indulgences or considerations for his testimony. I believe he was asked, and testified there was not. But take it all in all, in the light of all you have learned of him in the case, it is for you to deter-

mine the degree of credibility you will give to his testimony. If you believe, if it seems to you reasonable to believe, he is influenced in his testimony by any supposed advantage he may get from it, you have the right to take that into account. That is, it may be conceived as a possible thing that he may expect to get an advantage to himself in testifying, and thereby his testimony may be affected when he would not get anything, and there has been no arrangement to favor him or purpose to favor him. It is one of the things pertaining to our common human nature, in such a way that you have the right to take into account, in judging his testimony, that matter so far as you think you ought to, and, upon his whole testimony, and all you know, it is for you to say what degree of credit you give him. It is sometimes said that if a witness is found to have sworn falsely in one part, he should be disbelieved in anything he says. I do not understand that there is such a rule in law. The jury have the responsibility in such a case resting on them. In any given case, they may be satisfied a witness has sworn falsely with reference to one material matter, so as to make him entirely unworthy of credit; and they may set aside his testimony. In another case, where a witness has testified in regard to four important facts, and testified falsely in regard to one of them, the jury may, nevertheless, believe and think in regard to the other three he testified truly; and if they so think, in the exercise of their judgment they have the right to act upon it. In other words, there is no rule of law that requires a jury to disbelieve a witness in all he testifies because they disbelieve in part. It is a matter which the law leaves in their hands, uncontrolled by any rule."

The jury returned a verdict of guilty; and the defendant Clune alleged exceptions.

*W. H. Brooks*, for the defendant Clune.

*C. L. Gardner*, District Attorney, for the plaintiff.

ALLEN, J. The plea in abatement was not well founded. It was not necessary for the grand jury to examine the witnesses anew before finding the second indictment, and the fact that some of the grand jurors who found the original indictment were absent when the second indictment was found, and that others were present when the second indictment was found who

were absent on the former occasion, did not render the indictment invalid. *Commonwealth* v. *Woods*, 10 Gray, 477. *Commonwealth* v. *Woodward*, 157 Mass. 516.

The court correctly stated the rule of law as to the grounds upon which the defendant could be convicted as principal. But the defendant contends that the evidence was insufficient to show that he was present aiding and abetting Malley in uttering the check. We have some difficulty in fixing the position of the parties during the transaction, partly because the testimony is not precise, and partly because the plan referred to in the bill of exceptions has not been laid before us. The testimony, however, tended to show that the defendant prepared the forged check or order, and delivered it to Malley on the street, asking the latter to get a messenger boy to take it to the bank and to get the same cashed; that Malley walked up the street till he found a boy, and then down the street till he was nearly opposite the bank, when Malley sent the boy for the money; that it was obtained, and Malley received it from the boy, went into a drug store and got a bill changed, and paid the boy twenty-five cents, and when he came out of the drug store the defendant was coming across the street to where Malley was, and asked him if he had got the money, and received it from him, less the twenty-five cents. From this it might be inferred that the defendant, though not seen by the boy or by Malley, nevertheless may have kept them both in sight, and have remained near enough to be of aid to Malley in receiving the money promptly from him, or otherwise, as occasion might require. The case was properly submitted to the jury to determine, upon the evidence, whether the defendant was in a situation where he might actually aid Malley. *Commonwealth* v. *Lucas*, 2 Allen, 170. *Commonwealth* v. *Wallace*, 108 Mass. 12. *Commonwealth* v. *Knapp*, 9 Pick. 496, 517, 518. 1 Bish. Crim. Law, (8th ed.) § 653.

There was no legal error in refusing to instruct the jury that it would not be safe to convict upon the testimony of an accomplice, unless corroborated in a material point, or that such testimony should be scrutinized with great care and caution. *Commonwealth* v. *Wilson*, 152 Mass. 12. It is also to be observed that Malley was thus corroborated by the boy.

There is no rule of law that, if a witness has sworn falsely in one particular, it is unsafe for the jury to rely on any part of his testimony, or upon any uncorroborated statement by him; and the judge was right in refusing so to instruct the jury. The credibility of witnesses is for the jury; and if the defendant was entitled to have any comments made by the court upon Malley's testimony, the observations which were made were judicious, and were all that the defendant was entitled to.

*Exceptions overruled.*