COMMONWEALTH *vs.* JAMES P. McCARTHY & others.

Middlesex.     May 12, 1930. — June 30, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Conspiracy to Steal. Evidence,* Admissions, Competency, Remote, Relevancy and materiality, Collateral matters. *Witness,* Cross-examination. *Practice, Criminal;* Conduct of trial: order of evidence.

At the trial of an indictment charging three police officers with conspiracy to steal formulated by them at a date "somewhere in the vicinity of August 1" which the Commonwealth was unable to specify exactly, there was evidence that they were seen in a garage early in the morning of August 21; that one of them was washing an automobile while the other two were siphoning gasoline with a hose from a truck standing in the garage into a can; that they then put the can and the hose in the automobile and drove away in it; that, later in the same day, a gasoline can and rubber hose were found in the automobile of each defendant; that the defendants were acquainted with one another; that two of the defendants had been seen in the garage late in June or early in July, on which occasion one of them was in the office and the other was pouring gasoline into his automobile from a can; and that two of the defendants, upon being asked what they were doing in the garage on the night in August, denied having taken any gasoline. *Held,* that

(1) A verdict of guilty was warranted as to each defendant: the evidence justified a finding that the defendants were present by a prearranged plan and engaged in a scheme to steal the gasoline from the owner;

(2) The jury properly might consider, as evidence of their guilt, material statements and testimony by them which was found to be false;

(3) There was no error in the admission of the evidence as to the acts of two of the defendants in June or July: the Commonwealth was not bound by any specific date and those acts were not too remote;

(4) A question, asked of a witness for the Commonwealth on cross-examination, whether he was afraid that on his story the defendants would be found not guilty by the police trial board, was immaterial and properly was excluded;

(5) There was no error in the refusal by the trial judge to allow a witness to testify that a police officer who was witness for the Commonwealth took gasoline without paying for it and drove from his route to procure ice to cool the witness's beer: those matters were collateral.

There was evidence at the trial above described that one of the defendants "pulled" a certain box at about the same time when, according to the evidence for the Commonwealth, the defendants left the garage on August 21. *Held,* that evidence for the Commonwealth, that the distance from the garage to the box could be covered in an automobile in less than a minute, was material and properly was admitted.

During the cross-examination of a witness for the Commonwealth at the trial above described, the defendants admitted that they proposed to argue to the jury that the witness's testimony was contradictory to previous statements made by him. *Held,* that the Commonwealth therefore properly was allowed to anticipate that argument and to have the witness explain the meaning of his previous statements.

A witness testified at the trial above described that he worked in the garage; that, on one occasion, he had seen "three police officers" in uniform drive their car into the garage; and that, early in some morning in August, three police officers came thereto in an automobile. He was unable to identify the defendants as those officers. *Held,* that further testimony, that the witness told one of the officers that he could wash his automobile in the garage on the morning in August, was admissible in view of the testimony by other witnesses that the defendants were the officers who were in the garage on that occasion.

Counsel for the defendants stated at the trial above described that he did not propose to argue to the jury that the defendants had been "finally and without appeal removed from the . . . police force," but that he would argue that "they have been fired." *Held,* that the Commonwealth properly was allowed to show by the records of the appropriate district court that the defendants had appealed thereto to review the decision of a police trial board and that the appeals were pending.

INDICTMENT, found and returned on October 8, 1929, charging the defendants with conspiracy to steal.

Material evidence at the trial in the Superior Court before *Fosdick,* J., is stated in the opinion. The judge denied a motion by each defendant that a verdict be ordered in his favor. The defendants were found guilty. The defendants McCarthy and Cotter alleged exceptions.

*P. J. Delaney,* for the defendants.

*R. T. Bushnell,* District Attorney, for the Commonwealth.

CARROLL, J. The defendants McCarthy, Burke and Cotter were found guilty on an indictment charging conspiracy to steal the property of persons unknown. The defendants asked for specifications of time and the place "where the alleged crime was committed." The Commonwealth answered, that it was unable to specify the exact date on which the conspiracy was formed "but it was somewhere in the vicinity of August 1, 1929, when a conspiracy was formed in the city of Cambridge or its vicinity." The case is before us on the exceptions of McCarthy and Cotter.

There was evidence from police officer Falvey that he was assigned to Station 2; that the defendants, who were police officers, were assigned to the same station in August, 1929; that early in the morning of August 21, he went into a garage on his route and found the defendants there; that a sedan automobile stood on the wash stand and McCarthy was spraying it with water and held a hose in his hand, Burke was to the left of the automobile and Cotter was "alongside a five-gallon can which was on the running board of" a truck; that when the witness came in sight, a hose running into the five-gallon can "was taken out by Cotter," the can was seized by Burke, who put it in the sedan, and the hose was thrown into the back of the automobile; that when the hose was taken from the can and thrown into the sedan "it sprayed gasoline all over the front; that there was an impression of this can on the running board of the truck and gasoline was dripping down underneath this running board"; that Burke was, asked "What are you doing, filling up again?" and he answered, "Yes"; that Cotter said "is it any of your . . . business"; that the witness said "You have been warned by me to

keep out of here; therefore put that gasoline back in that truck and get out of here"; that Cotter put on his coat, "got into the" sedan, and McCarthy drove it, Cotter and Burke being on the back seat with the five-gallon can of gasoline. He further testified that some time in June or early in July he saw Cotter at the garage with a five-gallon can of gasoline, which he poured into his automobile; that at this time McCarthy was in the office of the garage; that the witness said to Cotter it was wrong to take things that did not belong to him and Cotter said that everything was all right; that on August 21 the witness with a captain of police found the automobiles of the three defendants and in Burke's car there was a five-gallon can and a piece of garden hose, in McCarthy's car there was also a five-gallon can and a piece of red rubber hose, and in Cotter's car there was a five-gallon can and two pieces of rubber hose; that on the evening of August 23 the captain asked Cotter, after the witness had repeated what he had seen at the garage, "what were you doing down there in the Main Street Garage?" and Cotter said "I wasn't down there"; that he was then asked, "What about this gasoline?" and he answered, "I know nothing about gasoline. If he said I was there, he is a liar." McCarthy also denied taking any gasoline.

The defendants moved for directed verdicts; their motions were denied; the defendants excepted. These three men were found at night in the garage in question; they had the appliance for taking the gasoline. One was apparently washing the automobile while the other two were siphoning the gasoline out of the gas tank on the truck into a five-gallon can, which they put into their automobile and took away. They were not strangers to each other. A can and hose were found in each car. They denied that they were present when the gasoline was stolen. It could have been found on all the evidence that by a prearranged plan they were all present, engaged in a scheme to steal the gasoline from the owner; that there was a mutual understanding and the defendants were acting together for a common end to accomplish a crime. *Attorney General* v.

*Tufts*, 239 Mass. 458, 493. The jury could take into account their denial, if found to be false,. and their testimony on material points, if this was found to be false; could consider such false testimony as evidence of guilt. *Commonwealth* v. *Devaney*, 182 Mass. 33, 35.

The indictment stated that the defendants on the fifteenth of August, 1929, conspired together to commit thereafter "from time to time and on different occasions as opportunity therefore [*sic*] should offer and not any time then particularly set and fixed, the crime of stealing." The specifications stated the conspiracy was formed "somewhere in the vicinity of August 1," that the Commonwealth was unable to specify the exact date. The defendants excepted to the evidence of what was done in the latter part of June or early in July of the same year. The Commonwealth was not bound by any specific date. There was no error in permitting the Commonwealth to introduce evidence of acts connected with the alleged conspiracy. The acts of June or July were not too remote.

On cross-examination of Falvey he was asked if he was afraid that on his story the three defendants would be found not guilty by the police trial board. On the objection of the district attorney the evidence was excluded. There was no error in this ruling. It was immaterial what effect Falvey's story would have on the trial board or that Falvey was afraid of the effect it might have. It was cross-examination and the evidence might properly be excluded. *Commonwealth* v. *Phelps*, 210 Mass. 109, 114.

There was no error in admitting the testimony as to the time it would take "to get from the Main Street Garage to Box 14." It appeared that "McCarthy pulled Box 14 at 3:40 A.M.," and Falvey testified it was at this time the defendants left the garage. If McCarthy pulled this box at forty minutes after three o'clock on the morning of August 21 and was going at the rate of twenty miles an hour, it was material to show as the Commonwealth did that the distance could be covered at this rate of speed in fifty-two seconds.

The Commonwealth, because of the cross-examination of

the witness Canney, could anticipate the argument of the defendants, who admitted that they proposed to argue to the jury that the witness had contradicted his present testimony by his testimony at a previous trial. For this reason the Commonwealth could explain the former testimony relating to the presence of a gasoline can in McCarthy's car and show by the witness that he did not intend at the previous trial to say that he did not see a can in McCarthy's car.

The witness Capibianco testified that sometime in August, 1929, three police officers in uniform came in a car to the garage in the early morning. Against the exception of the defendants, the witness testified, in substance, that he said to one of the policemen he could wash his car on the wash stand. The witness was unable to identify the defendants. There was evidence that this witness worked in the garage every night during August, and on another occasion he had seen "three police officers" in uniform drive "their car into" the "garage." Evidence had already been introduced, showing that the three officers found in the garage were the defendants. If the jury found, as they could have found, that Capibianco saw the officers on the same night that Falvey said they were in the garage, the evidence was admissible.

There was no error in the refusal of the judge to allow the witness Cavanaro to testify with reference to Falvey's taking gasoline without paying for it, and driving from his route to procure ice to cool the witness's beer. This was a collateral matter and could properly be excluded.

The district attorney called as a witness the assistant clerk of the Third District Court of Eastern Middlesex. This court has jurisdiction of appeals by police officers from the trial board of the city of Cambridge. Counsel for the defendants was asked if he proposed to argue that the defendants had been "finally and without appeal, removed from the Cambridge police force"; he answered "I am not going to so argue." Later, counsel said, "I am going to argue that they have been fired." The judge then allowed the Commonwealth to show by the records that

the defendants had filed petitions to review the decision of the trial board and that the appeals were pending. The question of the discharge of the defendants by the trial board had been brought into the case by the defendants, and if they intended to argue that they had been discharged the Commonwealth could show the true facts and could show that their appeals were pending. This was a collateral matter, but if the fact that the defendants had been discharged from the police force could in any way bear on their guilt or innocence, it was not erroneous to show that they had appealed from the sentence of dismissal.

*Exceptions overruled.*