COMMONWEALTH *vs.* WILLIAM McAULIFFE.

Norfolk.   May 6, 1946. — May 29, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Accessory and Principal.*

A finding that a police officer was guilty as a principal in the second degree, present, aiding and abetting in the breaking and entering into a café by another officer with intent to commit larceny, was not warranted by evidence merely that the other officer and the defendant, who was supposed to be patrolling his beat at some distance, had been parked in the defendant's automobile with a woman at a place from which the café was not visible, that, after the hours permitted by law for the purchase of liquor, the other officer, to the knowledge of the defendant, then left the others to get intoxicating liquor which the three were to drink, that the defendant, in reply to a question by the woman respecting the other officer, stated, "He'll be right back," and that the defendant expressed his innocence to a lieutenant and a captain of police after the other officer had been taken into custody in the café.

INDICTMENT found and returned on September 7, 1945.

The case was tried before *Broadhurst, J.*

*R. F. Barrett*, for the defendant.

*G. L. Rabb*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant was convicted on an indictment charging him with breaking and `entering the café of one Patrick Curtin in Quincy on August 4, 1945, in the nighttime with intent to commit larceny.   The defendant excepted to the denial of his motion for a directed verdict of not guilty.

The facts which the jury could have found may be stated briefly.   Patrick Curtin was the owner of Rouillard's Café at the corner of Copeland and Common streets, Quincy, in which there was a bar with alcoholic beverages in bottles. On two occasions in July, 1945, two such bottles were taken during the nighttime, and on one of those occasions a police box key of the Quincy police department was

found on the floor behind the bar.   On August 4, 1945,
about 2:30 A.M., one Ralph Moreau, a police officer, on
whose tour of duty the café was situated, entered by the
front door, which had been locked, and while making his
way about with a flashlight found himself in the presence
of Curtin, and of a captain and of a lieutenant of the Quincy
police department, and was taken into custody.   In the
meantime, the defendant, another Quincy police officer,
who was supposed to be patrolling his beat at least two
fifths of a mile away, was found seated with a young woman
in his own automobile on the premises of a filling station
on Center Street at a point over one hundred eighty feet
from the café.   The automobile could not be seen from the
café, nor the café from the automobile.   Over an hour
before, about 1:20 A.M., the defendant, who was driving
his automobile, had met Moreau at Brewer's Corner on
Moreau's beat, and about 1:40 A.M. they saw the woman
walking away from an altercation between two men, and
took her into the automobile to drive her to Quincy Square.
The defendant drove to two police boxes which Moreau
rang.   When passing a café known as Lucien's, Moreau
said, "I'm going to see a man about a jug," to which the
defendant replied, "When are you going to see him, to-
night?" and Moreau responded, "Yes.   After I ring in my
next box."   After driving to the Willard School, where
Moreau rang a box, the defendant said, "Where do you
want to go now, Ralph?" and Moreau said, "To try doors
at the gasoline station."   They drove two or three blocks
to the gasoline station, where the defendant parked his
automobile off the street between the pumps and the
building.   Moreau asked the woman, "How would you
like a drink?" to which she responded, "Yes, I'd love
it."   Moreau left, and the woman asked the defendant,
"Where has he gone?" and the defendant replied, "He'll
be right back."   After a short time the police lieutenant,
who had been in the café when Moreau entered, appeared
and told the defendant to get out of the automobile.   The
lieutenant said, "I didn't expect to see you here, Bill,"
and the defendant replied, "Why?   What's the matter?"

At police headquarters the captain said, "Bill, I am greatly surprised to see you in this mess." The defendant asked, "What mess, Captain?" The captain answered, "To be involved with Moreau in this break," and the defendant replied, "I don't know what you are talking about, Captain."

The Commonwealth contends that the defendant was a principal in the second degree present, aiding and abetting in the breaking and entering of Rouillard's Café with intent to commit larceny. The principle of law is well established. *Commonwealth* v. *Knapp,* 9 Pick. 496, 517–519. *Commonwealth* v. *Chapman,* 11 Cush. 422, 428. *Commonwealth* v. *Lucas,* 2 Allen, 170. *Commonwealth* v. *Clune,* 162 Mass. 206, 214. *Commonwealth* v. *Sinclair,* 195 Mass. 100, 110–111. *Commonwealth* v. *Baldi,* 250 Mass. 528, 534. *Commonwealth* v. *Lavery,* 255 Mass. 327, 333. *Commonwealth* v. *Mannos,* 311 Mass. 94, 109–110. But the evidence fails to bring the defendant within it. Undoubtedly the evidence shows that Moreau, to the knowledge of the defendant, had gone to get intoxicating liquor, and it is fairly inferable that all three persons were to drink it. It was also an hour when intoxicating liquor could not be lawfully purchased. See G. L. c. 138, § 12, as appearing in St. 1935, c. 468, § 1; § 15, paragraph 2, as appearing in St. 1938, c. 353. There is nothing, however, to show that the defendant was present, aiding and abetting in breaking and entering the café with felonious intent. All this cannot be supplied by the defendant's statement to the woman that Moreau would be right back or from the conversations with the police captain and with the police lieutenant. The denial of the motion for a directed verdict of not guilty was error. *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 273–274, and cases cited. *Commonwealth* v. *Portnoy,* 318 Mass. 274.

*Exceptions sustained.*