Commonwealth *vs.* William S. Conroy
(and two companion cases against the same defendant).

Bristol.  March 5, 1956. — March 28, 1956.

Present: Qua, C.J., Ronan, Wilkins, Counihan, & Whittemore, JJ.

*Breaking and Entering. Burglarious Implements. Attempted Larceny. Accomplice. Practice, Criminal,* Sentence, Appeal with assignments of error.

Conviction of a defendant on charges of breaking and entering in the night time with intent to commit larceny, of possession of burglarious instruments with intent to use them as such, and of attempting to commit larceny was warranted by evidence, including evidence of false statements made by him to the police, on which it could have been found that in accordance with a plan formulated by him and accomplices he and they went to a building on a city street at an early hour of the morning and he was stationed in the street as a lookout, decoy or ally while the accomplices, having a bag of burglar's tools, broke into the building and there attempted to force open a safe in order to steal its contents. [754–755]

In order to convict a defendant of certain crimes committed by accomplices while he participated at the scene thereof as a lookout, decoy or ally in accordance with a prearranged plan, it was not necessary for the Commonwealth to prove the identity of the accomplices. [756]

It was within the power of this court on an appeal with assignments of error in a criminal case under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, to order correction of an obvious error in sentencing the defendant to imprisonment for a term in excess of the maximum provided by statute, even though there was no assignment of error respecting the sentence; and the judgment was reversed and the case remanded to the Superior Court for the imposition of a new sentence. [756–757]

Three indictments, found and returned on June 9, 1955. The cases were tried in the Superior Court before *Rome,* J.

*Joseph F. O'Connell, Jr.,* for the defendant.

*John W. McIntyre,* Assistant District Attorney, for the Commonwealth.

Wilkins, J.  The defendant was found guilty by a jury on three indictments.  One (No. 7084) charged breaking and entering in the night time the China Clipper Restaurant

of Don H. Leung in New Bedford with intent to commit larceny. G. L. (Ter. Ed.) c. 266, § 16, as appearing in St. 1943, c. 343, § 1. The second (No. 7085) charged possession of burglarious implements with intent to use as such. G. L. (Ter. Ed.) c. 266, § 49. The third (No. 7086) alleged an attempt to break the safe of Don H. Leung with intent to commit larceny of the money or other valuables it contained. G. L. (Ter. Ed.) c. 274, § 6. The defendant was sentenced to the State prison for three concurrent terms of not more than eight, nor less than six, years. The cases are here upon his appeals with a consolidated summary of the record, a transcript of the evidence, and assignments of error. G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended by St. 1939, c. 341, and St. 1954, c. 187, § 1.

1. The first assignment of error is the denial of the defendant's motion for a directed verdict in each case. The evidence indubitably indicated that between closing time at midnight on March 9, 1955, and 4:40 A.M. on March 10 somebody with a bag of tools broke into the China Clipper Restaurant on Purchase Street, one of the principal streets of New Bedford, and tried to force open a safe. The defendant's contention that nothing in the record shows that he was directly or indirectly involved in the crimes we cannot accept, as we are of opinion that the evidence clearly warranted conviction on each indictment.

A police officer testified that about 1 A.M. on March 10 he saw the defendant in the company of two men on Purchase Street. A watchman of a theatre across the street from the restaurant testified that about 4:15 that morning he was seated in the ticket booth; that he saw two men walk together down the street, and come right back again; that he did not know where they went; that one of them, whom he later identified as the defendant, returned alone and stood in front of the restaurant looking into the window for ten minutes; that at the same time the witness saw somebody was moving back and forth inside the restaurant near the window; that the defendant then walked down the street; and that the witness telephoned the police, who

came about 4:40 A.M. and arrested the defendant, who "just hung around."

The arresting officer testified that the defendant, when asked what he was doing, replied that he was waiting for a friend from Fairhaven whose name he gave. In response to further questions the defendant said that he was from Providence, Rhode Island, had no automobile, and arrived in New Bedford about 4 A.M. having "hitch-hiked" from Providence in a trailer truck. At the police station to which the defendant was immediately taken, he was questioned by the officer in charge. The defendant there said that he arrived in New Bedford about 4 A.M. by a truck. He failed to give a definite description of the truck or its driver. He said that he was in New Bedford to see a friend living in Fairhaven; that the friend, whom he met in the service, did not know that he was coming; that he was standing at the spot where he was found, waiting for a more reasonable hour to call his friend before visiting him in an effort to obtain some form of employment; and that he was alone in New Bedford. In later questioning by the police the defendant said that he left his hotel room in Providence between 1 A.M. and 1:30 A.M., and walked to the Washington bridge where he waited till 2:45 A.M.; and that then he was driven in the truck to a point in the west part of New Bedford where about 4 A.M. he got out and walked two miles to the place where the police found him.

There was evidence that in later conversations with police officers the defendant at first denied having an automobile on March 9, but that when informed that the police had learned that he had borrowed one from a friend whose name and address they gave, he admitted that fact. There was also evidence that the defendant told the police that at 10 P.M. on March 9 he was watching fights on television in a bar in Providence, and also that at that hour he was watching the fights with the proprietor of his hotel in the hotel lobby. A police officer testified that there was no television set in the lobby. The proprietor testified that the

defendant left the hotel about 6:30 P.M. on March 9 saying that he was going out of town.

There was evidence that the break into the restaurant was not discovered until after the defendant was taken to the police station. When the police entered the premises about 7 A.M. it was observed that a screening had been pulled out and a window forced at the rear of the building. A cash register had been set down on the floor. An iron safe had been rolled from the front of the restaurant to a rear room, where it lay on its back out of sight from the street. Two pinch bars, wedged in the door of the safe, exposed an unsuccessful attempt to pry open. The safe dial had been knocked off and an effort made to punch an opening in the door. Near by on the floor were a four pound sledge hammer, a flashlight, and a bag containing a punch and a Providence newspaper of Wednesday, March 9, 1955.

The presence of the defendant at an early morning hour looking in a window of the restaurant while someone was moving about engaged, as it could have been found, in rolling the safe to a back room out of sight from the street, compellingly called for reasonable explanation. Not only was none forthcoming, but, as the jury could have found, the defendant uttered to the police on several occasions a series of falsehoods which could have been prompted only by a purpose to dissociate himself from the enterprise which led to the three indictments. *Commonwealth* v. *Webster*, 5 Cush. 295, 316. *Commonwealth* v. *Devaney*, 182 Mass. 33, 35–36. *Commonwealth* v. *Spezzaro*, 250 Mass. 454, 457. *Commonwealth* v. *McCarthy*, 272 Mass. 107, 111. *Commonwealth* v *DiStasio*, 297 Mass. 347, 360. *Commonwealth* v. *Granito*, 326 Mass. 494, 500. As a practical matter, the jury might well have found that the only truthful statements the defendant gave, until cornered as to the borrowing of the automobile, were his own name and address and, possibly, the name of an acquaintance in Fairhaven. The jury could have found that the defendant and two accomplices with a bag of burglarious implements came from Providence by an automobile borrowed there by the defendant on March 9;

that with the purpose of breaking and entering the restaurant they reached Purchase Street not later than 1 A.M. on March 10; that they remained in that vicinity until 4:40 A.M.; that the accomplices moved the safe and tried to force it open in order to steal its contents; and that the defendant by prearrangement was stationed in a position where he might render them aid and encouragement, as a lookout to give warning, or as a decoy to beguile the police and others from possible suspicions, or as an ally in making escape or in meeting any eventuality. If the defendant was so engaged, he was equally guilty with the perpetrators of the crimes. *Commonwealth* v. *Knapp*, 9 Pick. 496, 513, 516–518. *Commonwealth* v. *Clune*, 162 Mass. 206, 214. *Commonwealth* v. *Sinclair*, 195 Mass. 100, 110. *Commonwealth* v. *Frishman*, 235 Mass. 449, 455. *Commonwealth* v. *Lavery*, 255 Mass. 327, 333. *Commonwealth* v. *McAuliffe*, 319 Mass. 635, 637. On the evidence the defendant could have been found guilty of the common enterprises of breaking and entering in the night time with intent to commit larceny and of attempted larceny. If the jury believed that he actively participated in those crimes, they could also have found, as the defendant in that event concedes, that there was a common possession and a common intent to use the burglarious implements. *Commonwealth* v. *Tivnon*, 8 Gray, 375, 381. *Commonwealth* v. *Anderson*, 245 Mass. 177, 184. *Commonwealth* v. *Tilley*, 306 Mass. 412, 417–418.

The cases cited by the defendant are not in point. We need not mention them all. There is much more here than merely an opportunity to commit a crime, as was the case in *Commonwealth* v. *Curtis*, 318 Mass. 584. There is far more than speculation, conjecture, and surmise. See *Commonwealth* v. *O'Brien*, 305 Mass. 393; *Commonwealth* v. *Shea*, 324 Mass. 710.

2. The defendant's second and only other assignment of error is that in the charge "the question of identification of defendant was inadequately dealt with." The exception taken is the one to be considered. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. The exception here was to the

identification not of the defendant but of his accomplices.
What the defendant's counsel said was: "I want to save
my exception to the judge's failure to notify the jury on the
lack of positive identification of any of the alleged parties
who are alleged to have been the defendant's accomplices
at the scene of the crime; that the only evidence confront-
ing the jury was a movement, movements from within the
China Clipper — no positive identification of any person or
persons being there." We are not clear what the point of
this exception is unless it be that there was a burden of
proof resting upon the Commonwealth to give names or
other evidence tending to identify the accomplices. The
defendant cites no authority, and plainly there is not, and
should not be, any such rule of law, which would work not
in favor of justice but to the advantage of the underworld.
As noted above, there was much more before the jury than
movements within the restaurant. The defendant's argu-
ment does not face realities or the reasonable implications
of his improbable story and falsehoods. There was nothing
in the charge about identification of the defendant, and
there was neither error nor inadequacy in the charge on the
subject of accomplices.

3. The defendant seeks to raise, apparently for the first
time, a question of error in the sentence in case No. 7086.
The maximum sentence for attempted larceny is two and
one half years. G. L. (Ter. Ed.) c. 274, § 6. Here the sen-
tence was for not more than eight, nor less than six, years
in all three cases. The permissible sentences in cases No.
7084 and No. 7085 were for not over twenty and ten years,
respectively. G. L. (Ter. Ed.) c. 266, §§ 16, 49. In case
No. 7086 error in the sentence is obvious. The sentence is
voidable but not void until reversed. *Lewis* v. *Common-
wealth,* 329 Mass. 445, 448. There was what might be
called an "excess of jurisdiction." *Allard* v. *Estes,* 292
Mass. 187, 197. There is, however, no assignment of error
on this point. See G. L. (Ter. Ed.) c. 278, § 33D. In ap-
peals under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, it has been
stated broadly that such an assignment is necessary. *Com-*

*monwealth* v. *Cero*, 264 Mass. 264, 271. *Commonwealth* v. *Polian*, 288 Mass. 494, 496–497. *Commonwealth* v. *Gale*, 317 Mass. 274, 277. But while, in a proper case, we have said that a defendant cannot raise a question of law for the first time in a brief filed in this court, *Commonwealth* v. *Skalberg*, 333 Mass. 255, 256, we have also said that in appropriate instances this court has and will exercise the power to set aside a verdict or finding in order to prevent a miscarriage of justice when a decisive matter has not been raised at the trial. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25. *Commonwealth* v. *Andler*, 247 Mass. 580. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. *Commonwealth* v. *MacGregor*, 319 Mass. 462, 463. Here there was no miscarriage of justice in the verdict. An irregularity in the sentence affecting the judgment can be corrected by writ of error. *Sennott's Case*, 146 Mass. 489, 492. *Commonwealth* v. *Murphy*, 174 Mass. 369. *Sellers' Case*, 186 Mass. 301. *Gabis, petitioner*, 240 Mass. 465. *Commonwealth* v. *Novicki*, 324 Mass. 461, 467. G. L. (Ter. Ed.) c. 250, § 12. See *Commonwealth* v. *Morgan*, 280 Mass. 392, 394. In exceptional cases such an irregularity may be corrected on writ of habeas corpus. *Feeley's Case*, 12 Cush. 598. *Bishop, petitioner*, 172 Mass. 35, 36–37. We are of opinion that on this appeal we also have power to order correction of this obvious error and so avoid the need for other proceedings which could lead to but one result.

The verdict, which was legally and properly rendered, may avail for the purposes of judgment and sentence. *Commonwealth* v. *Novicki*, 324 Mass. 461, 467.

4. In cases No. 7084 and No. 7085 the judgments are affirmed. In case No. 7086 the judgment is reversed, and the case is remanded to the Superior Court for the imposition of a new sentence which shall take into consideration any deductions for time earned. *Lewis* v. *Commonwealth*, 329 Mass. 445.

*So ordered.*