Louis M. GRIECO, Petitioner,

v.

Frank A. HALL et al., Respondents.

Civ. A. No. 77–3903–T.

United States District Court,
D. Massachusetts.

April 11, 1980.

Beth Saltzman, Thomas G. Hoffman, Mass. Defenders Committee, Boston, Mass., for petitioner.

Robert V. Greco, Asst. Atty. Gen., Boston, Mass., for respondents.

## OPINION

TAURO, District Judge.

Petitioner was convicted in 1976 by a Massachusetts Superior Court jury of armed assault in a dwelling house,[1] and received a sentence of from eighteen to twenty years. The conviction was affirmed by the Massachusetts Appeals Court, and a petition for further review was denied by the Supreme Judicial Court. In this action, petitioner seeks a writ of habeas corpus,[2] alleging that the prosecutor's cross-examination and closing argument concerning his post-arrest silence violated his right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution as well as his Fifth Amendment right to remain silent.

---

1. He was found not guilty on a charge of assault and battery with a dangerous weapon.

2. Pursuant to 28 U.S.C. § 2254.

## I.

The evidence presented at trial is summarized in the opinion of the Appeals Court.[3] At the time of the alleged assault, a police officer observed a white van in the victims' driveway. Immediately after the assault, another officer observed a white van coming from the area in which the crime occurred. That officer later identified petitioner as the operator of the van. After pursuit by the police, the van came to a stop. The police saw someone jump out of the passenger side and run over a nearby hill. The police then saw petitioner come out of the driver's door and run to the rear of the van. Petitioner was seized and given *Miranda* warnings. When asked whether he wished to make a statement, petitioner declined.

At trial, petitioner testified concerning the circumstance of his presence near the white van that had been followed by the police. His version was that he and a friend had been drinking that evening. They then drove around Quincy for about half an hour until his friend stopped the car on a main street and went into a nearby building. Petitioner also left the car and walked down an alley to urinate. At that point, he saw a van drive around the corner of the alley, and two men jump out and then run up a hill into the woods. A police cruiser arrived moments later and the petitioner was arrested.

During direct examination, petitioner's counsel asked what the arresting officer had said to him at the time of arrest and what was his response.[4] Later on direct examination, his counsel inquired as to the conversation that took place between the petitioner and police officers at the Quincy police station.[5]

On cross-examination, the prosecutor asked petitioner: "Did you tell [the officer] that you were just urinating behind the building?" Petitioner responded: "He didn't ask me." The prosecutor then repeated his question and this time petitioner answered "No." Later, the prosecutor asked, "And during the entire time you were in the police station, did you at any time tell the police about [your friend] or that there was a car there?" Petitioner answered, "No, I didn't tell them nothing." Petitioner's counsel objected timely to each of these questions.

During his closing argument the prosecutor made reference to the fact that petitioner had not told either the arresting officer or officers at the police station the explanation which he gave on the witness stand. The prosecutor specifically asked the jury to conclude that petitioner's post-arrest silence was inconsistent with innocence; in other words, that petitioner had lied.[6] Peti-

---

**3.** *Commonwealth v. Grieco*, 5 Mass.App. 350, 362 N.E.2d 1204 (1977).

**4.** Q. Do you recall whether or not Officer Tobin said anything when he approached you?
A. Well, he said that I almost ran him over with a truck or something like that, something in that regards.
Q. And did you respond to that?
A. Yes. I told him I didn't know what he was talking about.

**5.** Q. All right. And at the police station, did you see Officer Tobin?
A. Yes.
Q. And did you have any conversation with him?
A. Yes.
Q. And did he say anything to you relative to the truck?
A. Yes.
Q. And what did he say?
A. He said that he wanted to know who was driving the truck and I told him I didn't know.

And he asked me if I ever seen anybody run out of the truck, jump out of the truck, and I told him it was too dark. I seen somebody run out but I could never tell who they were.

**6.** The prosecutor argued:
"And what about the Callei story? Does that make sense? He disappears. Does he tell the police about Callei? Here he has just been arrested, grabbed, knocked down. They are all over him. They stand him up and put the cuffs on him and shove him into a cruiser. Does he say, 'Hey, I was just urinating down here. My friend is right outside. He is parked up on Washington Street'?
Does that make sense to you? Incredible.

. . . . .

And once again, not to belabor the point, but not only at the scene but also at the police station there is no mention about his friend Callei. There is no mention that night to anybody about urinating. The first time that story was ever told—and I suggest it was a story—

tioner did not take exception to the closing argument.

## II.

Before the Appeals Court, petitioner asserted three grounds for reversal, including that the trial court erred by allowing the prosecutor to cross-examine petitioner about his post-arrest silence.[7] After reviewing the prosecutor's cross-examination, the Appeals Court concluded that its reference to defendant's silence violated the Due Process Clause of the Fourteenth Amendment and Article XII of the Massachusetts Declaration of Rights. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Commonwealth v. Sazama*, 339 Mass. 154, 158 N.E.2d 313 (1959). The court, however, then went on to note that " 'the harmless error doctrine is applicable to the kind of constitutional violation at issue in *Doyle*.' *Chapman v. United States*, 547 F.2d 1240, 1248 (5th Cir. 1977)." It held that the record in the Superior Court provided clear and overwhelming evidence of guilt and, therefore, the error in allowing the cross-examination described "was harmless beyond a reasonable doubt." *Grieco, supra*, at 1209. The Appeals Court made no reference to the prosecutor's closing argument.

## III.

This court agrees with the Appeals Court's conclusion that the trial court did not commit reversible error by allowing the prosecutor to cross-examine the petitioner about his silence after arrest. Indeed, under *Doyle, supra*, the trial court committed no error at all. There, the Court stated that as a general rule, the use of an arrested person's silence to impeach an exculpato-

ry story offered at trial is a deprivation of due process. But, the Court went on to note:

> It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

426 U.S. at 619–20 n. 11, 96 S.Ct. at 2245.

 Here, petitioner testified on direct examination that, when arrested, he denied being in the suspect van, and that he later told the police that he had seen someone run out of the van. *Doyle* does not shield petitioner from cross-examination on matters that he introduced in evidence during his own direct examination. Moreover, petitioner's direct testimony could arguably have created an inference that he had been cooperating with the police. In such circumstances, the prosecution may rebut that inference with evidence of the defendant's post-arrest silence, as well as any inconsistent or incomplete statements. *See, e. g., Charles v. Anderson*, 610 F.2d 417 (6th Cir. 1979) (dictum); *United States v. Mavrick*, 601 F.2d 921, 932–33 (7th Cir. 1979); *United States v. Dixon*, 593 F.2d 626, 630 (5th Cir.), *cert. denied*, 444 U.S. 861, 100 S.Ct. 126, 62 L.Ed.2d 82 (1979); *United States v. Fairchild*, 505 F.2d 1378, 1383 (5th Cir. 1975). Petitioner having voluntarily made a potential issue of these alleged post-arrest statements by his direct testimony, the trial court properly permitted cross-examination with respect to them.

---

was right here when he testified on the stand the other day.

Does that make sense? Is that consistent with innocence?

Don't be fooled."

**7.** Petitioner had assigned six errors before the Appeals Court but briefed only three. The three that he briefed were: 1) the district attorney's cross-examination of petitioner about his

post-arrest silence; 2) the denial of his motion for a continuance; and 3) the allowance of certain questions asked other witnesses by the prosecuting attorney. The Appeals Court noted that assignments of error that had not been briefed were deemed to have been waived. *Commonwealth v. Grieco, supra*, 362 N.E.2d at 1205 n. 2.

Even if the cross-examination did violate petitioner's constitutional rights, however, the error was harmless beyond a reasonable doubt. This court is required to weigh "[t]he prejudicial effect of the improper conduct . . . against the weight of the properly admitted evidence." *Morgan v. Hall*, 569 F.2d 1161, 1166 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142 (1978). As the Appeals Court found, the evidence of guilt was clear and overwhelming.[8] The cross-examination concerning his post-arrest silence was brief. Petitioner was asked only twice on cross-examination whether he had told the police his exculpatory story.[9] In response to one question, petitioner explained his silence by testifying that the police had not asked him why he was near the van. This court agrees with the Appeals Court that, standing alone, the challenged cross-examination did not affect the jury's verdict and was, therefore, harmless beyond a reasonable doubt.

### IV.

Of greater concern to this court is the content and tenor of the prosecutor's closing argument. In *Chapman v. United States, supra*, the Fifth Circuit stated:

When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated *nor linked with defendant's exculpatory story*, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error.

547 F.2d at 1250 (emphasis supplied).

Petitioner claims that the prosecutor's argument did link "the implausibility of the exculpatory story to the [petitioner's] ostensibly inconsistent act of remaining silent." *Id.* at 1249. Under *Chapman*, such linkage would constitute reversible error, even if the exculpatory story were transparently frivolous.

The Appeals Court opinion made no reference to the prosecutor's closing argument. This court, therefore, ordered the parties to brief the exhaustion issue with respect to the closing argument challenge. After reviewing their submissions, this court concludes that petitioner has failed to exhaust his state remedies in his challenge to the closing argument.[10]

---

**8.** The Commonwealth's evidence showed that when petitioner was arrested, his pockets contained a roll of the same brand of tape that was used to bind the victims, a live .38 calibre cartridge, and a Canadian silver half dollar identified as part of the coin collection stolen from the victims. Moreover, three police officers identified petitioner as the driver of the white van.

**9.** The prosecutor also asked petitioner whether he had directed the attention of the police to his friend Callei and his car at the time petitioner was being driven to the police station. Petitioner answered that the police did not ask him any questions. This questioning of petitioner was unobjected to at trial and is not challenged here.

**10.** Massachusetts postconviction procedures do provide petitioner an adequate remedy. M.G. L.A. ch. 278, sec. 29, states:

If it appears to the court that justice may not have been done, a justice of the superior court may at any time, upon motion in writing of the defendant, grant a new trial. *See also Picard v. Connor*, 404 U.S. 270, 272 n. 3, 92 S.Ct. 509, 510, 30 L.Ed.2d 438 (1971); *Miller v. Hall*, 536 F.2d 967, 968 (1st Cir. 1976).

The recent First Circuit opinion in *Grace v. Butterworth*, 79–1422 (February 5, 1980), does not require a contrary conclusion. There, the court stated that a federal habeas corpus petitioner's return to the state courts would be a futile exercise because those courts were certain to apply their contemporaneous objection rule to deny a new trial. In *Grace*, the Supreme Judicial Court of Massachusetts had already invoked that procedural bar in affirming the trial court's denial of a new trial. *Commonwealth v. Grace*, 381 N.E.2d 139, 140 (Mass.1978). Here, however, petitioner has not sought a new trial in the state courts, nor has the contemporaneous objection rule been explicitly invoked in his state appeals. "Although a trial judge may not be compelled by a motion for a new trial to review and reconsider questions of law which could have been raised at the trial, he nevertheless has the power to do so at his discretion." *Commonwealth v. McLaughlin*, 364 Mass. 211, 229, 303 N.E.2d 338, 350–51 (1973). Unlike the situation in *Grace*, the denial of a motion by petitioner for a new trial in the state court is not a foregone conclusion. Moreover, federal courts should not deprive the state courts of the opportunity to invoke their procedural rules, particularly those that may be

 As stated in *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), a claim has been exhausted if it was "fairly presented to the state courts." *Id.* at 275, 92 S.Ct. at 512. Petitioner did not fairly present his closing argument challenge to the Massachusetts Appeals Court. Rather, he presented a challenge to the cross-examination,[11] with only a fleeting reference to the closing argument, and without discussing the significance of its linkage by the prosecutor to petitioner's exculpatory story. It is significant that petitioner assigned as error the prosecutor's cross-examination, but made no reference to the closing argument.[12] In his brief before the Appeals Court, petitioner entitled his argument: "The Trial Court Erred by Allowing the District Attorney to Cross-Examine the Defendant About His Silence After He Was Arrested." The brief focused on the issue of cross-examination and concluded: "For all of the above reasons, the prosecutor's questioning of the defendant about his silence after arrest was harmful error requiring a reversal of his conviction." Although the text of the closing argument was set forth in the Statement of Facts, only one sentence, and one citation, in the ten-page argument of petitioner's brief related to the subject of the prosecutor's closing argument.

For all these reasons, this court concludes that the extant constitutional challenge to the prosecutor's final argument was not presented in a manner that would have given the Appeals Court a fair opportunity

of sufficient import to bar federal habeas review. *See Carothers v. Rhay*, 594 F.2d 225, 228 (9th Cir. 1979).

11. It is appropriate for this court to have ruled on the merits of the cross-examination claim, despite the lack of exhaustion of the closing argument issue, since resolution of the former does not logically depend upon resolution of the latter. *See Miller v. Hall, supra,* 536 F.2d at 969.

12. The assignment of error reads:
The trial court erred by allowing the prosecution to ask the defendant questions concerning his silence after he was arrested, thus violating the defendant's privilege against self-incrimination under the Fifth Amendment of the United States Constitution and

to deal with it. *See Turner v. Fair*, 617 F.2d 7 (1st Cir. 1980).

V.

The further question remains, however, as to whether or not petitioner's later unsuccessful application for review by the Supreme Judicial Court constituted exhaustion so as to meet the standards set forth in *Picard*. Petitioner's application to the Supreme Judicial Court more clearly raised the issue of closing argument. In the Statement of Facts, petitioner complained that

> the Appeals Court failed to note that the prosecutor, after repeatedly questioning the defendant about his silence while in police custody, then proceeded to argue before the jury that the defendant's trial testimony was false because he had not told the same things to the police when he was arrested.

Similarly, petitioner's argument contained in his application to the Supreme Judicial Court charged not only that the prosecutor questioned petitioner about his silence, but also that he "asked the jury not to believe the defendant's story for this reason."

 But, the Supreme Judicial Court's refusal to grant review does not support petitioner's claim of exhaustion with respect to the constitutional challenge to the prosecutor's final argument.[13] To the contrary, under Massachusetts appellate proce-

Article XII of the Massachusetts Declaration of Rights.
Indeed, petitioner's failure to take an exception at trial to the prosecutor's argument would have barred him from assigning the argument as error. M.G.L.A. ch. 278, § 33B. *Cf. Corkery v. Philbrook*, 374 N.E.2d 289 (Mass.App.1978); *Kando v. Dick Weller, Inc.*, 4 Mass.App. 808, 346 N.E.2d 924 (1976); *Commonwealth v. Ferguson*, 3 Mass.App. 796, 339 N.E.2d 248 (1975).

13. *Cf. Carothers v. Rhay*, 594 F.2d 225, 228 (9th Cir. 1979) (where issue was raised in state court only in state petition for habeas corpus that was dismissed on procedural grounds, petitioner failed to exhaust state remedies).

dure,[14] petitioner's application to the Supreme Judicial Court was a nullity with respect to the closing argument issue. It is well established that, on direct appeal under the state procedural statutes involved here,[15] the Supreme Judicial Court will not review an alleged error in the conduct of a trial unless that error is based on a proper exception and assignment of error. *See Commonwealth v. Balakin*, 356 Mass. 547, 551, 254 N.E.2d 422, 425 (1969); *Commonwealth v. Conroy*, 333 Mass. 751, 133 N.E.2d 246 (1956).[16] There is no reason to believe that the court's policy would differ where the case is brought before it in an application for further appellate review pursuant to M.G.L.A. ch. 211A, § 11. The Supreme Judicial Court's longstanding and firm policy is to refuse to consider issues not properly raised before an intermediate court from which further review is sought, *see, e. g., Kelsey v. Hampton Court Hotel Co.*, 327 Mass. 150, 152, 97 N.E.2d 407, 408 (1951) (issues "not presented to or decided by the Appellate Division . . . cannot be considered by us"). This principle appears to apply to review of decisions of the Appeals Court. *See Ford v. Flaherty*, 364 Mass. 382, 305 N.E.2d 112 (1973).[17]

No exception was taken at trial to the closing argument. No reference to the closing argument was made in petitioner's assignments of error before the Appeals Court. The Appeals Court ruled that assignments of error *not briefed* would be considered waived. Since the closing argument was not included as an assignment of error, let alone briefed, it is clear that no issue pertaining to it was ever before the Appeals Court.

■ The Supreme Judicial Court's declination, therefore, cannot be deemed a refusal to review *further* the final argument issue. At most, it might be deemed a refusal to consider that issue, at all, because the matter was never presented properly to the Appeals Court in the first instance.[18] The failure to exhaust at the Appeals Court level, therefore, was underscored rather than cured by the Supreme Judicial Court's declination.

In sum, the trial court did not commit reversible error in allowing the prosecutor to cross-examine petitioner regarding his silence. Even if the cross-examination was constitutionally impermissible, the error was harmless beyond a reasonable doubt. In addition, petitioner has failed to exhaust available state remedies in his challenge to

---

14. M.G.L.A. ch. 211A, § 10, grants the Massachusetts Appeals Court and the Supreme Judicial Court concurrent jurisdiction over determinations made in the Superior Court in most criminal cases. Unless otherwise ordered, initial review is by the Appeals Court. If the Appeals Court affirms, the defendant may then apply for further appellate review before the Supreme Judicial Court under M.G.L.A. ch. 211A, § 11. Such review is discretionary, and is granted only where the majority of the justices of the Appeals Court deciding the case certifies that the public interest or interests of justice make such review desirable, or where three justices of the Supreme Judicial Court authorize review "for substantial reasons affecting the public interest or the interests of justice."

15. M.G.L.A. ch. 278, §§ 33A–33G.

16. An exception to this rule exists where review is necessary to prevent a miscarriage of justice. *See Commonwealth v. Conroy, supra*, 333 Mass. at 757, 133 N.E.2d at 250; *Commonwealth v. Freeman*, 352 Mass. 556, 563–64, 227 N.E.2d 3, 9 (1967). This case does not appear to fit that narrowly circumscribed exception.

*See Commonwealth v. Fields*, 371 Mass. 274, 356 N.E.2d 1211, 1214 (1976) (suggesting that exception does not apply where error alleged is isolated argument); *Commonwealth v. Balakin, supra*.

17. In *Ford*, the court noted that it had discretion to order argument on issues presented to the Appeals Court that were not raised in an application for further review. It also stated that it could order that such issues be decided by the Appeals Court. Since, in *Ford*, some issues had been decided by the Appeals Court and others had been raised but not considered, the Supreme Judicial Court seemed to be suggesting that it would hear only those arguments actually considered by the Appeals Court.

18. This court recognizes, of course, that the Supreme Judicial Court's denial of an application for further appellate review cannot be considered as a statement of that court's position on the legal issues, procedural or substantive, of the case before it. *Ford v. Flaherty, supra*.

the prosecutor's closing argument. For these reasons, the petition for habeas corpus is denied.