**William R. GERAWAY, Petitioner,**

v.

**Palmer C. SCAFATI, as he is Superintendent of the Massachusetts Correctional Institution at Walpole, Respondent.**

**Misc. Civ. No. 69-79-C.**

United States District Court,
D. Massachusetts.

Dec. 29, 1970.

Walter J. Hurley, Boston, Mass., for petitioner.

Lawrence P. Cohen and James O. Druker, Asst. Atty. Gen., Com. of Mass., Criminal Division, Boston, Mass., for respondent.

## OPINION

CAFFREY, District Judge.

This is a petition for a writ of habeas corpus by William R. Geraway against the Superintendent of the Massachusetts Correctional Institution at Walpole. He is serving a life sentence as a result of his conviction of first degree murder in the Superior Court of Norfolk County. The amended petition relies on the contention that petitioner's constitutional rights were denied, both by the photographic identification procedure which preceded his trial and by the fact that an identification witness made an observation of petitioner in manacles being escorted to the courtroom in the custody of armed police officers.

The transcript of Geraway's trial in Superior Court was made a part of the record herein. It establishes that in addition to the testimony of the two identification witnesses, an attack on which is the crux of this petition, several other witnesses testified at the trial as to a series of highly damaging admissions made by Geraway after the homicide.

On Sunday, April 24, 1966, at 6:45 a. m., the body of David Martin Sidlauskas was found lying on a road on Moon Island near a gatehouse. Patricia Dunn testified that at about 7:30 a. m., that same day, Geraway, wearing a sweater belonging to one William Dennett in whose apartment she was then living, came to her house and said "I think I just killed a man." She testified that Geraway asked for the radio, listened to the news broadcast, and then mumbled to himself "they found him." Edward Kennedy, a former brother-in-law of Geraway, testified that he saw Geraway at his mother's house, talking to Michelle LeClair and Carol Kennedy (Kennedy's two sisters), on a Sunday morning in April 1966, and that Geraway told him that he "whacked a guy last night" because "he aggravated me." Carol Kennedy testified that on that same Sunday morning Geraway told her to "turn on the radio, I killed a guy."

She also testified that when she asked him why he "killed a guy," Geraway responded that he "thought it was Billy Dennett's wife's boyfriend." She further testified that on April 28, Geraway again came to her house, and remained a week, and that he made statements such as he did not want to leave because somebody might be able to identify him and because " *  *  * a couple of nurses that saw him coming down from Moon Island * * * might see him."

William Dennett testified that he saw Geraway every day during the period which is relevant hereto, in April 1966, in the apartment where Dennett and Patricia Dunn were living. He testified that on the morning of April 24, Geraway reported to him that he, Geraway, thought he had "just killed a guy * * * on Moon Island," and quoted Geraway as explaining that at Walter's After-Hours Club in Roxbury he "had a fight with a guy" and that thereafter he lured the man to Moon Island on a pretext, blinded the victim with tear gas, and shot him. There was also testimony at the trial from one DeFalco that Geraway had admitted to him the killing of Sidlauskas while he and Geraway were en route from Michigan to Boston.

The brief of petitioner before the Supreme Judicial Court and the thrust of his counsel's contentions at the hearing held in this court indicate that petitioner relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); as well as on Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). It should be noted, as was pointed out by the Court of Appeals for the First Circuit in United States v. DeLeo, 422 F.2d 487, at 497 (1970):

"These pre-trial identifications having occurred before June 12, 1967, they are not to be judged by the right to counsel rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, or Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178. Stovall v. Denno, 388 U.S.

293, 296, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Ours then is the due process standard of *Stovall* and *Foster* (Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 462 (1969)): whether the courtroom identifications were 'so unnecessarily suggestive and conducive to irreparable mistaken identification.' "

The Supreme Judicial Court carefully reviewed Geraway's contention with regard to the applicability of these federal standards and adequately set out, in detail, why, on the complete record and the totality of the evidence at the trial, the admission of the testimony, and the in-court identifications of Geraway by the witnesses Ruth Raycraft and John Lashus, were not constitutionally impermissible.

■ No showing has been made before this court sufficient to indicate any error of constitutional dimension on the part of the Supreme Judicial Court which, on the record, could properly find that Miss Raycraft's identification was keyed to her recognition of Geraway because of his smiling at her, both near the scene of the crime and again in the corridor outside the courtroom. Nothing has been developed or shown herein which in any way establishes that Miss Raycraft's seeing Geraway in manacles in the courthouse corridor (if, in fact, she did so see him, which is not at all clear) contributed to her identifying Geraway rather than someone else she had seen in the group of photographs exhibited to her during the course of the investigation. This is an adequate basis for the finding that her identification was independent of her pre-trial identification of Geraway based on a spread of photographs, even assuming the pre-trial identification was conducted in an unnecessarily suggestive and conducive manner, which I am satisfied on the record it was not.

■ By the same token, the identification by the witness Lashus has not been shown to be unnecessarily suggestive or conducive to irreparable mistaken identification, and, again, it appears from the record that he was shown something in the order of twelve to sixteen photographs, some three of which were those of Geraway. No unfairness has been shown regarding these photographs.

■ Quite separate and apart from the fact that the Supreme Judicial Court has properly indicated that the photographic identification procedures used herein passed constitutional muster, this is a case which calls for the application of the harmless error rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In the instant case, petitioner, according to the testimony at his trial, admitted the murder in question to five different witnesses, at five different places, on five different occasions. Research has failed to produce any case nearly as strong for the application of the harmless beyond a reasonable doubt rule as is the instant case.

Accordingly, the petition for a writ of habeas corpus is denied and respondent's motion to dismiss is allowed.