COMMONWEALTH *vs.* CHARLES STEVE KRONIS.

Suffolk.    February 20, 1973. — May 17, 1973.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Evidence,* On cross-examination, Judicial discretion.

At a trial for armed robbery, where a prosecution witness who had observed the robber constantly for about four or five minutes at close range during the robbery identified the defendant as the robber and on cross-examination was questioned extensively with respect to the robbery and to his memory of a hearing on probable cause approximately a year before the trial, and it was made clear that the witness did not recognize the defendant's attorney as the attorney who had cross-examined the witness at the hearing, there was no error in then excluding a question on further cross-examination of the witness as to how far the attorney was standing from him while asking questions at the hearing. [305-308]

INDICTMENTS found and returned in the Superior Court on January 8, 1971.

The cases were tried before *Frank E. Smith,* J.

The case was submitted on briefs.

*Klari Neuwelt* for the defendant.

*Alan Chapman,* Assistant District Attorney, for the Commonwealth.

KEVILLE, J.   The defendant was tried on indictments charging armed robbery and assault with a dangerous weapon. The jury returned a guilty verdict on each indictment. The case is before us on the defendant's appeal under G. L. c. 278, § 33A-33G. Only one assignment of error has been argued, viz., the refusal of the trial judge to permit defense counsel to attack a prosecution witness' in-court identification of the defendant through cross-examination on the witness' ability to remember defense counsel by whom the witness had been questioned at the hearing on probable cause in a District Court approximately a year earlier. The question is whether the judge's limitation of defense counsel's examination constituted an abuse of discretion. We conclude that it did not.

There was evidence from which the jury could have found the following facts. On January 22, 1969, John Dever, the manager of Donor Service, Inc., a private blood bank, was seated at a desk in the company's basement office. With him were two other employees, Robert Dever, the manager's son, and John Kelley. The office was well lighted and was equipped with overhead fluorescent lighting, a desk and floorlamps. At approximately 12:15 P.M., an armed intruder entered the office. He approached the desk at which John Dever was seated and said, "The money. The money." When Dever hesitated, the intruder fired a shot which passed by Dever's head and lodged in the wall. The intruder then pointed the gun at John Kelley and said, "I don't want to shoot you because you are an old man."

Robert Dever took $600 in cash from a drawer and put it on top of the desk. He had gotten this money from a bank a short time before for the purpose of paying blood donors. The intruder picked up the money and put it in his pocket. He then backed out of the room warning the three men not to follow him. John and Robert Dever went outside to see where he had gone. John Dever observed him getting into a car which was driven away by another person. The Devers returned to the office and summoned the police.

On the following day, all three were shown between forty

and sixty photographs by the police; but they were unable to pick out the robber. On several occasions during the next three months they viewed more photographs but no identification was made. In the latter part of 1970 John Dever received an anonymous telephone call through which he was informed that a person known as "The Greek" had committed the robbery. On that day Dever went to the police and gave them the information he had received. He was then shown fifteen or twenty photographs and from that group he picked out the defendant.

At the trial, which was held in November of 1971, approximately thirty-four months after the robbery, John Dever, Robert Dever and John Kelley were the only witnesses for the Commonwealth; and all three identified the defendant as the robber. From the testimony of the defendant's sister, wife and mother, the jury could have found that from approximately 10:00 A.M. until 3:30 P.M. on the day of the robbery the defendant was with them at his mother's apartment, and that he had come there to borrow $150 with which to pay a traffic fine in a District Court on the following day.

John Dever observed the defendant for about four to five minutes during the robbery. He watched the defendant every second. At the closest point the defendant was within eight feet of him. He went to a District Court for a probable cause hearing in December, 1970, and recognized the defendant outside the courtroom standing among a group of people.

John Kelley observed the defendant for three to four minutes during the robbery. He looked directly at the defendant. The defendant was about two and one-half feet from him and at the closest point the barrel of the gun was a foot from his stomach. On the morning of the trial, prior to its commencement, he saw the defendant seated among some twenty other persons outside the courtroom and Kelley recognized him without any difficulty.

Robert Dever saw the defendant in the office, gun in hand, saw him fire at his father, heard him speak, and after

putting the money on the table for the defendant, saw him take the money and leave the office.

At issue is the ruling of the judge sustaining the Commonwealth's objection to a question put to John Dever on cross-examination by defense counsel in the course of asking Dever a number of questions designed to test his memory of the robbery and the surrounding circumstances. In response to counsel's questions Dever recalled being cross-examined by an attorney at the hearing on probable cause in a District Court, but he did not remember the defendant's counsel as being the lawyer who had cross-examined him. When defense counsel then asked Dever how far the attorney was standing from him while asking questions, the question was excluded on the Commonwealth's objection. Pertinent excerpts from the record are printed in the margin.[1]

---

[1]

| DEFENDANT'S COUNSEL: | You do remember seeing me in Roxbury District Court, don't you, sir? |
| THE WITNESS: | No, I don't. |
| DEFENDANT'S COUNSEL: | You don't? |
| THE WITNESS: | I don't. |
| DEFENDANT'S COUNSEL: | Maybe we are in — you remember in Roxbury District Court downstairs before a judge; you appeared there in November, 1970? |
| THE WITNESS: | I remember being in Roxbury Court. |

****

| DEFENDANT'S COUNSEL: | You remember being in Roxbury District Court, and being cross-examined or examined by an attorney? |
| ASSISTANT DISTRICT ATTORNEY: | Again I pray your Honor's judgment. |
| THE JUDGE: | I will let him have that. Do you remember being in Court? |
| THE WITNESS: | Yes, I do, your Honor. |
| THE JUDGE: | Some lawyer ask you a lot of questions? |
| THE WITNESS: | Yes. |
| THE JUDGE: | Did you know who it was? |
| THE WITNESS: | I presume it was this gentleman; I don't remember him. |
| DEFENDANT'S COUNSEL: | But there was a lawyer there. The lawyer did ask you some questions. Now, do you have any idea how long the lawyer was there in the court with you? |
| THE WITNESS: | I would guess between five and seven minutes. |
| DEFENDANT'S COUNSEL: | When the lawyer asked you questions, how far was he standing from you? |
| ASSISTANT DISTRICT ATTORNEY: | Pray your Honor's judgment. |
| THE JUDGE: | Well, I don't suppose we need to inquire into a District Court proceeding. The man is here on an indictment. |

The defendant asserts that the excluded question was relevant in order to evaluate John Dever's memory of the robbery because it tended to establish similarity in circumstances in the robbery and in the witness' encounter with defense counsel in December, 1970; and that the judge's ruling prevented defense counsel from attempting to demonstrate to the jury Dever's lack of ability to remember faces.

Although "pertinent cross-examination is a valuable right essential to a fair trial and is to be jealously guarded" (*State* v. *Crawford,* 202 N. W. 2d 99, 105 [Iowa]), the scope and extent of cross-examination rests in large part on the discretion of the trial judge. *Commonwealth* v. *Flynn,* 362 Mass. 455, 470. "This is particularly true where the test of memory or of observation is directed to facts which do not surround the offense itself." *Garcia* v. *State,* 427 S. W. 2d 897, 899 (Tex. Crim. App.). "How far the cross-examination of a witness may be relevant to the issue on trial must be left largely to the sound discretion of the court." *Commonwealth* v. *Nassar,* 351 Mass. 37, 43-44. Counsel was attempting "to utilize a 'test instance,' i.e., an in-court test of the witness' ability to observe and recollect a fact not material to the case being tried but illustrative of his general ability to observe and to later recall and relate his observations." *People* v. *Ross,* 276 Cal. App. 2d 729, 733. In the *Ross* case, defense counsel sought to question a witness on his ability to identify court personnel present at a previous trial. It was held that the proposed test instance would not fairly test the witness' power to observe and remember faces and that it was an inappropriate criterion for measuring the ability of the witness to observe and recollect. See *United States* v. *Evans,* 239 F. Supp. 554,

| | |
|---|---|
| DEFENDANT'S COUNSEL: | If your honor please — |
| THE JUDGE: | Not the least bit interested in what happened in the District Court. |
| DEFENDANT'S COUNSEL: | What I am trying — |
| THE JUDGE: | In the exercise of my discretion, I will not allow you to cross-examine as to immaterial and irrelevant things. Go ahead with the next question. |

557-558 (E. D. Pa.); *McCain* v. *State,* 46 Ala. App. 627, 630; *State* v. *McDaniel,* 392 S. W. 2d 310, 315 (Mo.).

The record shows that defense counsel was afforded ample opportunity to explore John Dever's powers of discernment and recollection with respect to the robbery and with respect to his memory of the District Court hearing. Prior to limiting this line of inquiry, the judge had already permitted defense counsel questions which made clear to the jury that Dever did not recognize him as the attorney who had cross-examined him in the District Court. It was not an abuse of discretion to terminate the inquiry at that point. The circumstances were not similar. The impact of the event upon the memory of a victim of armed robbery is hardly to be equated with the comparison sought to be drawn by defense counsel. There was no error.

*Judgments affirmed.*