COMMONWEALTH *vs.* RICHARD M. FIORE.

Suffolk.     January 9, 1974. — March 25, 1974.

Present:   TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Criminal,* Appeal; Exceptions: failure to save exception; Questioning of witness by judge; Comment by judge. *Evidence,* Admissions and confessions, Competency, Hearsay, Judicial discretion, On cross-examination, Leading question, Questioning of witness by judge. *Witness,* Refreshment of recollection.

At the trial of indictments for assault by means of a dangerous weapon, evidence that the victim was stabbed in a brawl with a group of youths, that the defendant had participated in the brawl, that on two occasions after the fight friends had heard the defendant admit stabbing the victim, and that following his arrest the defendant had told a police officer that during the fight he had pulled a knife from his pocket but had dropped it, warranted a verdict that the defendant was guilty. [821-822]

Where a witness at a criminal trial who had testified before a grand jury concerning an admission made by the defendant failed to do so at first at the trial, but after examining his earlier testimony stated that his memory was refreshed, and then testified as he had before the grand jury, his testimony was not hearsay, admissible only to impeach the witness's credibility, but constituted affirmative evidence. [823]

When a witness at a criminal trial, after giving ambiguous and contradictory testimony, adopted as true a prior statement which had been ad-

mitted in evidence to impeach his credibility, the statement acquired full probative value. [823-824]

At the trial of indictments arising from a stabbing during a brawl among a group of youths, testimony by a participant that as he approached the group he heard someone say, "[L]et's whip this car," and that he responded, "You will have to whip me first," was admissible to demonstrate the state of mind of the group. [824]

Where, during cross-examination of a witness at a criminal trial, defence counsel had ample opportunity to demonstrate that the witness's testimony was unreliable, there was no abuse of discretion in excluding hypothetical and conjectural questions asked the witness. [824-825]

The extent to which one may lead his own witness is in the discretion of the trial judge. [825-826]

At the trial of indictments where there was a discrepancy between the proffered testimony and earlier statements of two witnesses, and where there was a likely possibility that each witness would perjure himself or admit to perjury in his prior statement, questioning of the witnesses by the trial judge pointing out the inconsistencies in their testimony did not constitute improper pressure on the witnesses to conform their testimony to their earlier statements or deprive the defendant of a fair trial. [826-827]

In a criminal case before this court under G. L. c. 278, § 31, the trial transcript, although submitted at the argument by defence counsel without objection by the prosecutor, was not part of the record which this court was required to consider. [827-828]

INDICTMENTS found and returned in the Superior Court on June 21, 1972.

The cases were tried before *Paquet,* J.

*John A. Sullivan (Richard K. Sullivan & John P. Flynn* with him) for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

REARDON, J.    The defendant, indicted for assault with intent to murder, and assault and battery by means of a dangerous weapon, was tried before a jury in the Superior Court. There the trial judge directed a verdict of not guilty on the indictment charging assault with intent to murder. A verdict of guilty was returned by the jury on the charge of assault and battery by means of a dangerous weapon. The case comes here on the defendant's exceptions.

The jury could have found that in the early evening of November 25, 1971, Thanksgiving Day, the defendant was in a group of youths present on Garfield Avenue in Hyde Park

when some words were exchanged between them and one San Filippo, who was attending a party at a house on that street. San Filippo went into the house and emerged shortly thereafter to find that the group was "banging on a car down the street." He drove his car up to the group and came out therefrom wielding a bayonet and took hold of one member of the group, following which a general melee ensued. One Goodwin, a friend of San Filippo's who was in attendance at the party, left it to discover the brawl on Garfield Avenue and went to the aid of his friend. After several minutes of combat during which he was subjected to an assault, San Filippo left the fracas in a weakened and bloody condition. Goodwin, having joined in the affair and having been hit on the head by something he thought "was a bottle," was rendered unconscious, and awoke to find himself lying on the sidewalk, the victim of two extremely serious stab wounds in the abdomen and two in the back, which put him in the Carney Hospital for two and a half months. We discuss the several exceptions.

1. The defendant excepted to the denial of his motion for a directed verdict. The direct and corroborating circumstantial evidence which might have led a jury to conclude that the defendant was responsible for Goodwin's injuries was as follows. Leon Brady, a friend of the defendant and present at the scene of the scuffle, testified that sometime after the incident the defendant had come to his home and had made a telephone call to the Carney Hospital which Brady had overheard. The call constituted an inquiry about Goodwin's condition. After perusing his prior testimony before the grand jury, Brady testified that he heard the defendant say, "That is good that he is all right, because I am the one that stabbed him!" On cross-examination Brady stated that he was not sure of what had been said.

Thomas Haywood, another friend of the defendant present at the scene of the fracas, originally stated on the stand that he saw the defendant later in the evening of the day when it occurred but had no memory of the substance of their conversation. The prosecutor then confronted him with

a statement he had made at the probable cause hearing in the District Court when he said he heard the defendant say, "I stabbed the kid that was on the ground." Haywood testified that his earlier statement was not the truth and that he was coached into it. The trial judge then took up questioning Haywood on the discrepancy between his statement at the trial and his earlier statement in the District Court, and inquired if the witness understood what he was saying. To this Haywood responded that he did not understand and, after some reflection, testified that the defendant had told him, "I think I stabbed him," and that the "him" referred to was San Filippo. The prosecutor on redirect examination then again confronted the witness with his prior statement at the probable cause hearing in the District Court that "Fiore had said to you, 'I stabbed the man that was lying on the sidewalk,' " and the witness affirmed that it was the truth.

A detective, James Solari, testified that after the defendant was arrested and advised of his rights he stated that upon becoming involved in the fight he had pulled a knife from his pocket but had dropped it and had never recovered it.

There was sufficient evidence to submit the case to the jury. The evidence need not be such as to convince a judge beyond reasonable doubt. *Commonwealth* v. *Baron,* 356 Mass. 362, 365-366 (1969). So long as there is competent evidence comprehending all the necessary elements of the offence it is up to the jury to determine whether there is enough to support a guilty verdict. When the only source of such evidence is the defendant's admissions, those admissions have been held to provide the requisite minimum of proof. *Commonwealth* v. *Kimball,* 321 Mass. 290 (1947). *Commonwealth* v. *Machado,* 339 Mass. 713 (1959). The testimony of Brady and Haywood thus would have been sufficient to warrant denial of the motion for a directed verdict. In addition, the jury had evidence of the defendant's participation in the fray and his statement to the detective that he had pulled a knife from his pocket from which the jury might have inferred a readiness to use a dangerous weapon.

It is argued by the defendant that the testimony of neither Brady nor Haywood is to be labeled affirmative evidence since their statements were introduced by the prosecutor as prior inconsistent statements made by these witnesses at prior proceedings. These, it is argued, were hearsay unless admissible for the limited purpose of impeaching the testimony of these two individuals by self-contradiction. *Salonen* v. *Paanenen,* 320 Mass. 568, 575 (1947). The record, however, negates this contention. On the failure of Brady to testify as he had before the grand jury on the defendant's relevant statement, the judge excused the jury and had Brady examine his earlier testimony. In response to the judge's inquiry, Brady then stated his memory was refreshed and that he would testify in the same manner at the trial, which he did. His earlier statement before the grand jury was not introduced at all but identical evidence was introduced as his firsthand recollection. The employment of the grand jury minutes to revive his present memory was perfectly proper. *Commonwealth* v. *Rogers,* 351 Mass. 522, 534 (1967), cert. den. sub nom. *Rogers* v. *Massachusetts,* 389 U. S. 991 (1967); *Commonwealth* v. *Mustone,* 353 Mass. 490, 494 (1968), and does not diminish the force of the subsequent testimony. See discussion in *Fisher* v. *Swartz,* 333 Mass. 265 (1955).

With respect to Haywood's testimony, he made at first ambiguous and sometimes contradictory assertions. His prior statement in the District Court was then admissible only for the purpose of impeachment. Later on, however, he stated that it was the truth. In so doing he adopted his earlier testimony and it thus acquired full probative value. See *Zimberg* v. *United States,* 142 F. 2d 132, 136-137 (1st Cir. 1944), cert. den. 323 U. S. 712 (1944). See also *Commonwealth* v. *Rudnick,* 318 Mass. 45, 59-60 (1945). To be distinguished is the situation in *Desmond* v. *Boston Elev. Ry.* 319 Mass. 13, 15 (1946), where there was a lack of certainty as to whether a witness affirmed his prior statement or merely affirmed the fact that the statement had been made. Nor is *Commonwealth* v. *Campbell,* 352 Mass. 387, 395 (1967),

cited by the defendant, helpful to him. In that case also the testimony of the witness did not constitute a plain adoption of an earlier statement, and in fact the witness immediately indicated that he rejected the validity of that statement. Here the affirmance was unequivocal and not a momentary lapse from repeated denials. That Haywood's testimony was somewhat confused and conflicting did not remove from the jury the power to decide which points of his testimony to believe, and all of the statements he made are to be considered affirmative evidence. *Commonwealth* v. *Holiday,* 349 Mass. 126, 129 (1965), and cases cited. The motion for a directed verdict was rightly denied.

2. The defendant next maintains error in the judge's rulings on a number of evidentiary points.

(a) San Filippo testified that on his first encounter with the group on Garfield Avenue he heard someone say, "[L]et's whip this car," to which he responded, "You will have to whip me first." The defendant complains of the admission of this testimony. The testimony, however, was not hearsay which is confined to "extrajudicial utterances . . . offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*" Wigmore, Evidence (3d ed.) § 1766 (1940). See Hughes, Evidence, § 453 (1961). The statement complained of here was not offered in support of the truth of any matter asserted herein but simply to demonstrate the state of mind of the group gathered on Garfield Avenue and of San Filippo. This was relevant in explanation of the circumstances preceding the encounter which culminated in the assault. *Hartnett* v. *McMahan,* 168 Mass. 3 (1897). *Commonwealth* v. *Zaidon,* 253 Mass. 600, 602 (1925). *Reardon* v. *Marston,* 310 Mass. 461, 464-465 (1941). The mere fact that the statement was made was material to the controversy, and whether it was true was irrelevant.

(b) Error is claimed in the limitation by the judge of the cross-examination by defence counsel of Leon Brady. On direct examination the judge had interrupted an answer from him concerning the telephone conversation of the defendant which Brady had overheard. When Brady tried to testify

what he "thought" he heard, the judge stated, "Not what you thought. What did you hear?" On cross-examination defence counsel was able to demonstrate that the witness was uncertain as to the exact words that he heard. He then pursued his interrogation by asking the witness whether he heard not, "I am the one that stabbed him;" but "I am the one they say stabbed him." Here the Commonwealth's objection was sustained. A similar result followed an attempted question as to whether "there [was] anything else that you thought he might have said." It is elementary that a witness need not be restricted in testimony to matters of which he is absolutely certain, and that his testimony may be guarded by such terms as "I think," or "I believe." Wigmore, Evidence (3d ed.) § 658 (1940). It is equally clear, however, that the most helpful evidence is specific recollection of specific observations rather than vague impressions. As the "controlling mind at the trial," *Commonwealth* v. *Haley,* 363 Mass. 513, 518 (1973), quoting from *Whitney* v. *Wellesley & Boston St. Ry.* 197 Mass. 495, 502 (1908), a judge could properly lend assistance enabling a witness to focus his testimony on a specific memory of specific evidence. This discretionary power of the judge is particularly well established in the case of cross-examination the scope of which, for the purpose of impeaching testimony, is subject to his control. *Commonwealth* v. *Underwood,* 358 Mass. 506, 513 (1970), and cases cited. That discretion is subject to review only on abuse. The defendant enjoyed an ample opportunity to demonstrate that Brady's testimony was unreliable, and the judge did not abuse his discretion in excluding the hypothetical and conjectural questions.

(c) The defendant's complaint of the employment of leading questions in the examination of the witness Ridge is without merit. The sound discretion of the trial judge governs on the extent to which one may lead his own witness. *Guiffre* v. *Carapezza,* 298 Mass. 458, 460 (1937). *Commonwealth* v. *Flynn,* 362 Mass. 455, 467 (1972), and cases cited. In allowing some leading questions in this instance, the judge noted that the witness's memory is "very dubious."

Faulty memory presents an appropriate occasion for permitting leading questions. *DiMarzo* v. *S. & P. Realty Corp., ante,* 510, 512. There was no error.

3. Finally, the defendant alleges that the judge demonstrated bias against him and deprived him of that fair and impartial trial guaranteed by art. 29 of our Declaration of Rights, and the Fourteenth Amendment to the United States Constitution. The complaint is based on allegations of improper pressures exerted by the judge on Brady and Haywood to conform their testimony to the earlier statements alluded to above. It appears that in the case of Brady the judge dismissed the jury and questioned him on his prior testimony and had him read the grand jury minutes of it. Following this, Brady affirmed that he would testify in the same manner at the trial.

In the case of Haywood, the judge's examination of him commenced after he had stated that he did not recall the content of a conversation with the defendant, and that he had lied in describing that conversation in the District Court. The judge then asked Haywood if he understood "what you are saying," following which Haywood modified his testimony. When Haywood testified that the defendant had referred in his conversation to having stabbed San Filippo and not Goodwin, he was again questioned by the judge who suggested an inconsistency with the witness's earlier testimony.

We note that with respect to the judge's questioning of Brady no exception was taken. "[A] bill of exceptions . . . which . . . [does] not disclose the saving of any exception in the court below . . . [brings] no question of law to this court." *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 (1970),[1] quoting from *Commonwealth* v. *MacGregor,* 319 Mass. 462, 463 (1946). In neither case, however, do we find any error as a result of the judge's remarks. The judge has a

[1]The defendant cites *Webb* v. *Texas,* 409 U. S. 95 (1972), for the proposition that failure to object to improper remarks of a judge cannot be considered a waiver of due process. In fact, that opinion states only that there is no necessity to interrupt a judge's remarks to save a defendant's rights. In the *Webb* case, objection was made as soon as the admonition was completed. *Id.* at 96-97.

right, and it is perhaps sometimes a duty, to intervene on occasion in the examination of a witness. "[A] judge need take no vow of silence . . . to see that justice is done, or at least to see that the jury have a fair chance to do justice." *Commonwealth* v. *Haley,* 363 Mass. 513, 519 (1973), citing Lummus, The Trial Judge, 19-21 (1937). Here a discrepancy appeared between the proffered testimony and earlier testimony of the same witnesses. A likely possibility existed that each witness would perjure himself or admit to perjury in his prior statement. As this became evident to the judge, he indulged in no transgression when for the benefit of the witness and to aid in developing the most trustworthy evidence he took a hand in indicating to the witness the extent of the inconsistencies. See *Commonwealth* v. *Fleming,* 360 Mass. 404, 409 (1971); *Commonwealth* v. *Oates,* 327 Mass. 497, 500 (1951); *Commonwealth* v. *Freeman,* 352 Mass. 556, 560 (1967), and cases cited. In this case the questioning by the judge was not clearly biased or coercive. We see no similarity in his questions and the long diatribe on the danger of perjury, considered by the Supreme Court in *Webb* v. *Texas,* 409 U. S. 95, 96-97 (1972), which was delivered by the trial judge to the defendant's only witness before the witness had uttered a word on the stand. In the *Webb* case, there was more danger of depriving the defendant of his defence than in the instant case where the judge's activities were primarily aimed at pinning down the exact content and nature of the witness's testimony where questions had been raised as to its clarity and reliability. The defendant was not deprived of his right to a fair trial by any actions of the judge in this area.

4. At argument of this case before us, and without objection by the Commonwealth, defence counsel submitted a transcript of the trial. This is no part of the record when a case reaches this court on exceptions pursuant to G. L. c. 278, § 31, as amended. The excepting party has the burden to see to it that there is adequate description in his bill of the matters by which he alleges that he is aggrieved and which are to be argued. *Commonwealth* v. *Rivers,* 307 Mass. 225, 227 (1940), and cases cited. *Commonwealth* v. *Marino,* 343

Mass. 725, 727 (1962). *Commonwealth* v. *Morris,* 358 Mass. 219, 224 (1970).[2] It is the very purpose of a bill of exceptions to present material necessary to a decision in a fashion which relieves the court of a need "to pick out the few important facts from the undigested mass of irrelevant and impertinent facts with which they are covered up." *Commonwealth* v. *McGrath,* 361 Mass. 431, 433 (1972), quoting from *Romana* v. *Boston Elev. Ry.* 218 Mass. 76, 81 (1914). *Commonwealth* v. *Richardson,* 361 Mass. 661, 662-663 (1972). In the *McGrath* case we stated the impropriety of circumvention of this appellate procedure by a defendant who attempts to incorporate either directly or by reference the trial transcript into the bill of exceptions. In this case counsel evidently neglected to include in his bill what he later felt to be relevant occurrences at the trial and hoped to correct the situation by a submission of the transcript. This procedure is doubly offensive because it seeks to put before us matters outside the record and also shifts to the court the duty of analysis of the transcript in a case based on exceptions. Nevertheless we have examined the transcript and have evaluated the defendant's arguments of bias in the light of the whole course of the trial. Our action in so doing constitutes no indication that we shall do so again. While the judge may on occasion have been forceful in his remarks, we cannot say that there was any incident which so prejudiced the defendant as to indicate the need for a new trial nor, on balance, was the conduct of the judge through the trial biased or unfair.

*Exceptions overruled.*

---

[2]Following the trial and sentencing, the defendant moved that the case be taken subject to G. L. c. 278, §§ 33A-33G. The motion was denied, and although exceptions were saved the defendant does not argue that the denial was error. Allowing exceptions under the statute in cases other than homicide is a matter within the sound discretion of the trial judge. *Commonwealth* v. *King,* 356 Mass. 495, 496-498 (1969).