COMMONWEALTH *vs.* EARL RIGGS KENNEDY, II
(and a companion case[1]).

Berkshire.    November 12, 1974. — April 18, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Identification. Practice, Criminal,* Exception: failure to save exception. *Robbery. Evidence,* Judicial discretion, On cross-examination. *Constitutional Law,* Confrontation of witnesses.

Where it appeared that one eyewitness to a robbery had the defendant under observation for at least two minutes at a close distance under daylight conditions, during part of which time he was pointing a gun at her, and a second witness observed the defendant for fifteen seconds or longer as he got out of an automobile parked alongside one in which she was sitting and later as he ran from a store, tuck-

---

[1] Commonwealth *vs.* Walter Rowell Wilson.

ing money into his pocket, and reentered the automobile, conclusions were warranted that the witnesses' in-court identifications of a defendant were based upon their observations at the time of the robbery and were independent of and untainted by prior impermissibly suggestive out-of-court identifications. [220-222]

There was no error at the trial of robbery indictments in excluding on the basis of form a question asking the victim whether she had seen a man with a moustache in her store on the day of the robbery. [222-223]

Where no objection was made to a witness's in-court identification of a defendant at a criminal trial and the record revealed no substantial risk of a miscarriage of justice, this court declined to consider whether the identification violated the defendant's constitutional rights. [223-225]

At a trial on an indictment for robbery, evidence that a defendant accompanied a co-defendant to borrow an automobile and took the driver's seat, that he parked the car outside a liquor store at some distance and in such a way that the car was heading away from the store toward an exit, that the car drove off after the co-defendant, having robbed the store, ran toward the car and got in, that as he ran out of the store the co-defendant was not carrying any beer or a bottle of liquor and that a toy gun used in the robbery was found underneath the driver's seat warranted a finding that the defendant and co-defendant were engaged in a joint enterprise to rob the store. [225]

INDICTMENTS found and returned in the Superior Court on October 5, 1973.

The cases were tried before *Hayer, J.*

*Susan J. Baronoff* for the defendant Kennedy.

*Malvine Nathanson* for the defendant Wilson.

*William W. Teahan, Jr.*, Special Assistant District Attorney, for the Commonwealth.

ROSE, J. The defendants were convicted of robbery and have appealed pursuant to the provisions of G. L. c. 278, §§ 33A-33G. The defendant Kennedy questions the findings of independent bases of in-court identifications made by two prosecution witnesses and challenges the exclusion of questions put to the victim on cross-examination. Assignments of error not argued in the defendant's brief are deemed waived. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972). The defendant Wilson raises the question whether, in the circumstances of this case, an in-court identification resulted in a denial of due process of law, notwithstanding his failure to move to suppress the

identification or to take an exception to its admission. He also contests the denial of his motion for a directed verdict, on the ground that sufficient evidence was not introduced to establish his complicity in the robbery.

From the evidence introduced at trial the jury could have found the following facts. Kennedy sought and obtained permission to borrow a station wagon from one Lee Guest. Wilson drove the car to a shopping area in Williamstown in which was located the Colonial Package Store. There was only one other car in the area of the parking lot which served the store. Wilson parked alongside that car, although heading in the opposite direction, i.e., away from the package store. The parking spaces between the two cars and the store were all vacant. The other car was occupied by a thirteen-year old girl, Laurie Richardson, and her two-year old niece.

Kennedy got out of the car and went into the package store for approximately five minutes. He purchased six bottles of beer from Barbara Mottor, the proprietor of the store. When this transaction was completed, he asked her for change for the telephone. When she opened the cash register, he reached for the money in the register and pulled a gun. Kennedy instructed Mottor to sit on the floor and proceeded to clean out the register. He then ran back to the car (without the beer), stuffing the money into his pocket. He "jumped in," and the car drove off. A gun, which was identified as the one used in the robbery, was later found underneath the seat on the driver's side of the station wagon. It was a toy gun.

1. Kennedy took exception to the denial of his motions to suppress the anticipated (and subsequently admitted) in-court identifications of him by Barbara Mottor and Laurie Richardson, claiming that their identifications were tainted by impermissibly suggestive out-of-court identifications.[2] We have carefully reviewed the evidence at the

---

[2] The judge suppressed out-of-court identifications by Barbara Mottor of Kennedy at the North Adams police station, where the defendants were the only two nonuniformed persons present, and at the Wil-

pre-trial hearing held on the motions, and we conclude that the judge's findings of fact were supported by the evidence. We further conclude that his determination that Mottor's in-court identification would have an independent source was fully supported by his subsidiary findings[3] and reflected a proper application of the standards laid down by the United States Supreme Court (*United States* v. *Wade,* 388 U. S. 218 [1967]; *Stovall* v. *Denno,* 388 U. S. 293 [1967]; *Simmons* v. *United States,* 390 U. S. 377 [1967]), and repeated in this jurisdiction on many occasions.[4] See *Commonwealth* v. *Cooper,* 356 Mass. 74 (1969); *Commonwealth* v. *Frank,* 357 Mass. 250 (1970); *Commonwealth* v. *McGrath,* 361 Mass. 431, 434-438 (1972); *Commonwealth* v.

---

liamstown police station, where a photograph of Kennedy was the only one bearing the date of the robbery. The judge also suppressed an out-of-court photographic identification by Laurie Richardson.

[3] The judge found that Barbara Mottor had the following opportunity to observe the person who robbed her in the store.

"That the person was in the store for approximately five minutes and was in and around the shelves.

"That there were certain partitions in this store that cut the defendant's view off from Barbara Mottor for part of the time, but that she did wait upon the man who came in, . . .

"That she had an observation of him in the store.

"That this observation was made during the daytime. It is noted that July 5th is in the summer, with daylight saving, and that she had an opportunity to observe the defendant for a period of two minutes at least, if not more."

[4] While the importance of each factor listed in *United States* v. *Wade, supra,* at 241, varies with the factual context, it has been noted in this jurisdiction that the extent of the witnesses' opportunity to observe the defendant at the time of the crime is generally the most important factor. *Commonwealth* v. *Ross,* 361 Mass. 665, 671 (1972), judgment vacated 410 U. S. 901 (1973), affd. on rehearing 363 Mass. 665 (1973). *Commonwealth* v. *Flaherty,* 1 Mass. App. Ct. 282, 287 (1973). See note 3, *supra,* and note 5, *infra,* as to the judge's findings concerning the witnesses' opportunities to observe Kennedy. It is also significant for the finding of an independent basis for the in-court identification that the observation is made "under circumstances likely to fix in the mind of the witness the identity of the person confronted." *Commonwealth* v. *Frank,* 357 Mass. 250, 254 (1970). *Commonwealth* v. *Flaherty, supra,* at 288. The witness Mottor, who viewed the defendant while he pointed the gun at her, and the witness Richardson, who observed the defendant stuffing money into his pocket while running, both observed the defendant under impressionable circumstances.

*Leaster*, 362 Mass. 409 (1972) ; *Commonwealth* v. *Murphy*, 362 Mass. 542 (1972), and cases cited therein; *Commonwealth* v. *Flaherty*, 1 Mass. App. Ct. 282, 286-288 (1973). It was also established by clear and convincing evidence that the in-court identification by Richardson would have an independent source.[5] "[C]areful findings supported by the evidence and upholding an in-court identification are not likely to be disturbed by us." *Commonwealth* v. *Frank*, *supra*, at 254. *Commonwealth* v. *Murphy*, *supra*, at 548.

2. Kennedy also argues that he was denied the right to cross-examine the victim Mottor at trial as to whether the man who robbed her had a moustache. He claims that the exclusion by the trial judge of a series of three questions put to the victim impermissibly circumscribed his right to confront the witnesses against him in violation of the Fourteenth Amendment to the United States Constitution (see *Pointer* v. *Texas*, 380 U. S. 400 [1965]), and art. 12 of the Declaration of Rights.

The point is not well taken. The trial judge did not rule out the subject matter which counsel for the defendant was attempting to elicit. Rather, he was waiting for counsel to formulate the question in an acceptable form.[6] The fact that after three attempted questions counsel for the defend-

---

[5] As to Laurie Richardson's ability to observe, the judge found:

"That she saw a man get out of the passenger's side.

"That he looked toward her and she looked toward him.

"That she saw him walk some thirty or forty feet into the package store.

"That sometime thereafter he came out of the package store and was sort of running, and that he was tucking money into his pocket.

"That she saw him on the side view, and saw him as he got into the car, at which time he faced toward her.

"That she had an opportunity to look at him anywhere from five to ten to fifteen seconds, or longer. The exact time was not given. Her estimate was that it took him about five seconds to walk, or run from the package store back to the car."

[6] The trial judge made clear that his reasons for excluding the questions were on the basis of the form of the questions only. After the first question, he stated, "I will sustain the objection to the form. You can rephrase that question." After the second question he stated, "In that form, sustained," and after the third, "In that form I will sustain it."

ant never returned to this subject matter indicates to us no more than that counsel voluntarily, although perhaps in frustration, chose to abandon this line of inquiry.

The defendant took an exception only to the exclusion of the third formulation of the question, and thus we shall consider whether that question was properly excluded. See *Commonwealth* v. *Foley,* 358 Mass. 233, 236 (1970); *Commonwealth* v. *Richter, post,* 701 (1975). The form of the third attempted question was, "Did you see a man in your store on July 5, 1973 that had a moustache?" The question is too vague and indefinite since it apparently anticipates an answer that would include any man who was in the store on the designated day. See generally, Leach & Liacos, Handbook of Massachusetts Evidence, 69 (4th ed. 1967); McCormick, Evidence, § 7 (2d ed. 1972); Underhill, Criminal Evidence, § 491 (5th ed. 1956). It was properly within the discretion of the judge to exclude the question. See *Commonwealth* v. *Greenberg,* 339 Mass. 557, 580-581 (1959); *Commonwealth* v. *Slaney,* 345 Mass. 135, 142 (1962); Mottla, Proof of Cases, § 447 (2d ed. 1966).

3. Wilson contends in his brief that it was error to admit the in-court identification of him by Laurie Richardson. He argues that the use of the in-court identification violated his due process rights in that it was based on a momentary observation and was tainted by suggestive pretrial confrontations. However, we do not consider the argument. The defendant's assignments of error contain no reference to this point. No motion to suppress or motion to strike was made, and no objection or exception was taken to the identification testimony.[7] Defense counsel instead attacked the identification on cross-examination. See *Commonwealth* v. *Lombardo,* 2 Mass. App. Ct. 387, 389

---

[7] Counsel for the defendant initially did object to the in-court identification on the ground that there was no evidence that the witness had observed the defendant at the time of the incident. (This assertion was erroneous as there had been such evidence.) However, when the court questioned defense counsel as to whether he wanted the prosecution to develop such a foundation, defense counsel withdrew his objection.

(1974). He introduced in evidence a photographic identifi-
cation of the defendant by the witness,[8] an accidental con-
frontation as the handcuffed defendant entered the District
Court building,[9] and the observation and identification of
the defendant by the witness at the probable cause hearing
in the District Court.[10]

Defense counsel apparently chose as a matter of strategy
to challenge the in-court identification by presenting the
question of its reliability to the jury, to be considered as
part of their factual determination. The defendant, not
having raised at trial any question of law whether the
in-court identification should have been suppressed, and
not having claimed an assignment of error on this point,
cannot now raise it before us. It has been stated broadly
that in appeals under G. L. c. 278, §§ 33A-33G, an assign-
ment of error is necessary. *Commonwealth* v. *Conroy*, 333
Mass. 751, 756 (1956), and cases cited. However, as was
stated in the *Conroy* case: "[W]hile, in a proper case, we
have said that a defendant cannot raise a question of law
for the first time in a brief filed in this court, *Common-
wealth* v. *Skalberg*, 333 Mass. 255, 256 [1955], we have

---

[8] The testimony elicited from the witness, first by Wilson's counsel
and then on redirect by the prosecution, concerning the photographic
identification indicates that the witness correctly identified the defend-
ant's picture from the two sets of four different pictures she was shown.
Contrary to the defendant's assertion before us now that the picture of
the defendant was in some way conspicuous, the witness testified there
was no special notation on the picture. See *Simmons* v. *United States*,
390 U. S. 377 (1968); *Commonwealth* v. *Ross*, 361 Mass. 665, 672-673,
675-676 (1972).

[9] See *Geraway* v. *Scafati*, 320 F. Supp. 718, 720 (D. Mass. 1970). See
generally, *Commonwealth* v. *Leaster*, 362 Mass. 407, 409-411 (1972),
and cases cited therein.

[10] The witness testified that she observed the defendant for approxi-
mately one and one half hours at the District Court. At that hearing
she identified the defendant. She testified to the effect that the District
Court identification was based upon her observation of the defendant
in the car.

The witness also testified that she was taken into a back room (pre-
sumably the judge's chambers) at the District Court. The defendant
intimates that the defendants were pointed out to the witness on this
occasion, but there is no evidence to that effect.

also said that in appropriate instances this court has and will exercise the power to set aside a verdict or finding in order to prevent a miscarriage of justice when a decisive matter has not been raised at the trial." *Commonwealth* v. *Conroy, supra,* at 757, and cases cited. A careful examination of the record reveals that no substantial risk of a miscarriage of justice is present in this case. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967); *Commonwealth* v. *Dupont,* 2 Mass. App. Ct. 566, 571 (1974).

4. Wilson also contests the denial of his motion for a directed verdict, on the ground that sufficient evidence was not introduced to establish his complicity in the robbery.[11] The evidence as to Wilson's participation in the robbery was as follows. Wilson and Kennedy picked up the car from Lee Guest shortly before the robbery. When Guest turned the car over to them, Wilson immediately took the driver's seat. In the parking lot, Wilson parked the car some distance from the store heading away from the store and toward an exit. After committing the robbery, Kennedy ran toward the car, opened the door, and "jumped in." There was evidence that Kennedy did not have any beer or a bottle of liquor from the store. The car than drove off. The toy gun, identified as the one used to perpetrate the robbery, was later found underneath the front seat of the car on the driver's side.

The jury were free to infer from the above evidence that Wilson was engaged in a joint enterprise with Kennedy to rob the liquor store. " 'It is not essential that the inferences drawn from facts or circumstances be necessary inferences.' The inferences must only be reasonable and possible." *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 791 (1975), quoting *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968), cert. den. sub nom. *Bernier* v. *Massachusetts,* 393 U. S. 1058 (1969).

*Judgments affirmed.*

---

[11] For the purposes of this argument, the defendant grants the validity of the in-court identification.